Per Curiam.

The first question to be determined is whether the grant as it originally stood, before amendment should be read.
The English authorities which have been referred to, are surely founded in reason ; there is however no doubt but that these authorities pre-suppose the idea of mala fides in the alteration by the party himself.
The common law has wisely determined not to look to what effect an alteration by the person interested might have on the meaning of a contract. To preserve the inviolability of written contracts, it will not permit the impious touch of fraud, without destruction. By no possible means can this reasoning apply to the case before the court. The grant as altered could not be read, so as to affect the defendant because he, nor any person whose right he claimed had notice, so as to contest the proposed alteration. It cannot be supposed that the lessor of the plaintiff had any intention of making an alteration in his grant otherwise than as the laws of his country authorised; for this purpose he applied to the county court, who decided that the alteration should be made, and certified the same to the secretary of North-Carolina, in consequence of which it was done. If the lessor of the plaintiff omitted to give notice, for want of which it could not be read against the defendant or any other individual having title at the time of the alteration, it would be too much to say, that the right should be destroyed altogether.
The reasoning of the common law does not apply to this case, though the letter may, but, qui haeret in litera, haeret in cortice. The next inquiry will be. what effect this grant shall have; it is admitted that it does not cover the land in dispute.
The cases in Hayw. appear correct; but whether they will apply to this case the jury must determine, it is however proper to remark, that the authority *117 in Haywood shews that the party had been in possession of the land as surveyed, which it would seem operated as notice to subsequent enterers.
In the case before the court, the jury will consider whether the original claimant of the 5000 acre tract,had any notice of Kings claim to the land in dispute. It appears from the grant of the 5000 acres that no notice at all was taken of the claim of 640 acres of Thomas King.
The jury are certainly competent to rectify the mistake, should they conceive it one, but not so as to affect subsequent claimants, having no other notice of the manner in which the land was run, than what the registers books would afford; the grant for the 640 acre tract as it stands registered, appears complete; all the lines closing. The case of a clerical mistake might admit of a different consideration, there the face of the grant would shew a mistake—as for instance if in calling for the closing line, a contrary course from the one which would close the surveyed, is expressed in the grant.
It has been objected that the plaintiff cannot prevail on account of fraud, in procuring the original grant to Thomas King.
No evidence has been offered to shew that the mere circumstance of the three surveys made in the name of Baily, King, and Walling, calling for a warrant of the same number, is sufficient proof of fraud in obtaining the grant from North Carolina; whether the court have the power of enquiring into the manner in which the grant has been obtained it is not now necessary to determine. Whether Thomas King imposed upon or defrauded the state in obtaining his grant, is not material with the lessor of the plaintiff, unless he had notice of that fraud. If he had not, he was an innocent purchaser and ought not to be affected. (1)
Verdict for the defendant.

 See2 Ver 599. 751. Amb. 313 2. Fonb. 307. 8. 9. 1. John 537. Newl. cont. 510. 511. Sug. 650. 2. Eq. ca. Cowp. 278. 2.Com. Dig. 718. 3 Atk. 407.