(LOCAL LAW.)

## POLK'S LESSEE v. WENDELL et al.

There are cases in which a grant is absolutely void; as where the State has no title to the thing granted, or where the officer had no authority to issue the grant, &c. In such cases, the validity of the grant is necessarily examinable at law.

A grant raises a presumption that every prerequisite to its issuing was complied with, and a warrant is evidence of the existence of an entry; but where the entry has never in fact been made, and the warrant is forged, no right accrues under the act of North Carolina of 1777, and the grant is void.

Where a party, in order to prove that there were no entries to authorize the issuing of the warrants, offered to give in evidence certified copies of warrants from the same office, of the same dates and numbers, but to different persons, and for different quantities of lands : Held, that this was competent evidence to prove the positive fact of the existence of the entries specified in the copies; but that in order to have a negative effect in disproving the entries alleged to be spurious, the whole abstract ought to be produced in Court, or inspected under a commission, or the keeper of the document examined as a witness, from which the Court might ascertain the fact of the non-existence of the contested entries.

In such a case, certificates from the Secretary's office of North Carolina, introduced to prove that on the entries of the same dates with those alleged to be spurious, other warrants issued, and other grants were obtained in the name of various individuals, but none to the party claiming under the alleged spurious entries, is competent circumstantial evidence to be left to the jury. In such a case, parol evidence, that the warrants and locations had been rejected by the entry-taker as spurious, is inadmissible.

It seems, that, whether a grant be absolutely void, or voidable only, a junior grantee is not, by the law of Tennessee, permitted to avail himself of its nullity as against an innocent purchaser without notice.

ERROR to the Circuit Court of West Tennessee. This was an action of ejectment, for five thousand

acres of land, in the State of Tennessee, granted by the Governor of North Carolina, to Polk, the lessor of the plaintiff, on the 6th of May, 1800, on a warrant from John Armstrong's office, dated May 25th, 1784. The defendants, who were proved to be in possession of part of this tract, claimed title under a grant from the Governor of North Carolina to John Sevier, for twenty-five thousand and sixty acres, bearing date on the 28th of August, 1795. This grant appears by the annexed certificate of survey to be founded on forty land warrants of six hundred and forty acres each, numbered from 1634 to 1676, and surveyed in one entire tract. The land in dispute was proved to lie within the lines of Sevier's grant. The plaintiff having proved that John Carter was entry-taker of Washington county until February 28th, 1780, and that Landon Carter was then appointed, offered in evidence an office copy of an abstract (marked K. in the transcript) of the warrants, on which Sevier's survey and grant were founded ; the original book of entries being destroyed. From this copy it appeared, that all the warrants were issued from the Washington county office, in April or May, 1780, to the surveyor of Sullivan county, and purported to be founded on entries which bore date on the 16th of September, 1779. They were all signed " Landon Carter, Entry-taker." He also produced, and offered to give in evidence, office copies of warrants from the same office, (marked H. and L. in the transcript,) of the same dates and numbers, but to different persons, and for different quantities of land. These warrants ap-

peared to be issued by John Carter; and were of-
fered, like Seveir's warrants, for the purpose of
showing that the latter were spurious, and, conse-
quently, that Seveir's grant was void. The plaintiff
also offered in evidence a grant to Seveir for 32,000
acres, dated 27th of November, 1795, which pur-
ported to be founded on thirty-six warrants, all of
them except the two first on alleged entries, dated
on the same 16th of September, 1779. He also of-
fered to prove, that the two first warrants had been
satisfied by prior grants, and in respect to the others,
that warrants for the same numbers issued to other
persons, and were recognised in the abstract of Carter's
entry book, but none of Seveir's. The plaintiff also
offered to prove, that the warrants and locations of
Seveir had been insinuated, in 1794 or 1795, into
the entry taker's office without his knowledge; that
they were rejected by the entry-taker as spurious;
and that the locations were in Seveir's hand-writing.
The plaintiff also offered to give in evidence a report
to the legislature of Tennessee, of November 8th,
1863, declaring all Seveir's warrants to be fraudulent
fabrications. All this testimony was overruled and
rejected by the Court, to which the plaintiff except-
ed. A verdict was taken, and judgment rendered for
the defendants, and the cause was brought by writ of
error to this Court.

Mr. *Harper*, and Mr. *Gaston*, for the plaintiff, ar-
gued, 1. That it was competent for the plaintiff to
show, that no entries had been made in the land of-
fice of North Carolina, and that, therefore, the Go-
vernor had no power to issue the grant. The act
of 1777, c. 1. s. 3. makes the entry the first essential

and indispensable requisite to obtaining a title to vacant land. The 5th section points out the difference between location, entry, and warrant. The entries are the foundation of the claim, and are all to be numbered in the order in which they are made. The 9th section declares every right obtained in any other manner, " utterly void." This section follows the directions in regard to the entry, and makes a valid entry the one thing needful. In the construction of this statute, it has been settled in the Courts of North Carolina, that no *legal* title is created until the grant; and that the elder grant, though founded on a junior entry, is, at law, to be preferred to a junior grant on an elder title ; that an equitable interest is acquired by the first entry, which is to be enforced as other equitable titles are enforced. It is also settled, that when a grant issues, it furnishes sufficient *prima facie* evidence, that all the prerequisites of the law have been complied with ; and that it cannot be avoided by showing irregularities in the conduct of the officers who superintended the progress of the claim from the entry to the grant. There have been loose dicta, unsatisfactory and inconclusive reasonings, from which other inferences have been drawn : But it is denied, that it ever was law in North Carolina, that a grant should be good if it could be clearly shown that it was not founded on an entry, but was wholly fraudulent. It would have been impossible to pronounce such a decision without a violation of the plain, strong words of the 9th section of the act, " shall be deemed, and are hereby declared utterly void." Such a decision too,

would have been inconsistent with the first principles of the common law, fraud being the object of its peculiar abhorrence, and contaminating every act.[a] Courts of common law have a concurrent jurisdiction with Courts of Equity, in all cases of frauds.[b] It is impossible that a grant, begun and ended in fraud, where there has been no claim entered, nor purchase made from the State, should be valid. If, however, a doubt could exist in the case of a grant issuing before the year 1789, assuredly none can be entertained on a grant made by the governor of North Carolina since the cession of the territory, which now forms the State of Tennessee, to the United States. By the act of cession, the sovereignty and domain are relinquished by North Carolina, and a mere ministerial power is reserved to the Governor of that State to perfect grants, " where entries have been made agreeably to law, and the titles not perfected." The State has no longer authority to dispose of the lands. She is no longer their proprietor. The Governor has a mere naked power, unconnected with an interest, to make grants where entries have been previously made. A grant issued where no entry has been made, is an act wholly unsupported by the power; and cannot possibly transfer an interest. The whole question has, in fact, been already settled by the reasoning and decision of this Court, when this case was formerly before it.[c]

a Fermor's case, 3 Co. Rep. 77.

b 3 Bl. Com. 431. Bates v. Graves, 2 Ves. jun. 295. 8 Ves. jun. 283. Arthur Legat's case, 10 Co. Rep. 109.

c 9 Cranch, 87.

2. The evidence offered by the plaintiff was proper in itself, and relevant to show, that no entries had been made, prior to the cession, authorizing the Governor of North Carolina to make a grant to Sevier. The best evidence was offered of the pretended warrant on which his grant was founded, and, also, to show, that other warrants existed of precisely the same numbers. This alone raised a presumption, that one or the other must have been spurious. According to the act of 1777, c. 1. s. 5. there could not possibly be two sets of entries of the same numbers, without the most extraordinary negligence. This testimony ought to have gone to the jury, even if there had been no other. It should have been left to them to decide which of the two sets of warrants was spurious under the peculiar circumstances of the case. But it was supported by corroborating evidence of great weight; by the abstract of Carter's entries. The competency of this evidence may be maintained both on the ground of common law principles, and on special enactments of the local legislature. It is the best which the nature of the case admits of. Works compiled by authority and order of the government of the country, on public occasions, and on subjects of public interest, are recognized as authentic documents in courts of justice, and admitted as evidence in matters of private right. Such are, in England, the celebrated Doomsday Book; the Survey of the King's Ports; the *Valor Beneficiorum ;*[a] copies of Surveys of Church and Crown Lands;

a *Gilb. Law of Evid.* 69. *Phillips on Evid.* 303, 304.

kept in unsuspected repositories.[a]  The day book of

a prison, containing a narrative of the transactions
there, is proof of the time of a prisoner's commit-
ment.[b]  So, terriers are evidence of manorial boun-
daries, either when found in the regular repositories,
or in places where the custody can be satisfactorily
explained.[c]  But, in this case, there are positive sta-
tutes of the legislature of Tennessee, by which this
book of entries and copies from it are made evi-
dence.[d]  In addition to all this, was the parol evi-
dence.  The introduction of these locations and
warrants into the office in 1795, in a secret manner,
betrayed a consciousness that they had not before
existed there.  This accumulation of proof fully es-
tablished the plaintiff's allegation; or, at all events,
it had a tendency to establish it, and its sufficiency
ought to have been left to the jury.  As to the legis-
lative report; there is some reason to believe, that
the legislature of Tennessee intended, by their act
of 1807, c. 82., to make it evidence.  At least it
might have been proper evidence to bring home no-
tice to the defendants, prior to their purchase.

The *Attorney General*, and Mr. *Williams*, contra,
insisted, 1. That the proceedings on which a grant
issues, are to be presumed to be correct.  They con-
stitute a question between the State and the grantee

a *Phillips*, 304.  11 *East*, 234.  1 *Maul. & Selw.* 294.
b King v. Aikley, cited *Phillips*, 313.
c *Phillips*, 316, 317.
d *Laws of Tenn.* 261.

1820.

Polk's Lessee
v.
Wendell.

only.  Between private parties, evidence *dehors* the patent is wholly inadmissible at law.[a]  2. The testimony, offered in this case was clearly inadmissible upon the principles of the former decision of this Court; in which, it may be added, that the Court has gone farther than the local Courts in permitting inquiries into facts occurring prior to the issuing of a grant.[b]  The Court below gave no opinion upon any specific evidence, but on the general question, and rejected the whole testimony, which was offered to prove that the warrants were forged.  But in order to prove this, the production of the warrants was indispensable, and no inferior proof ought to have been received.  The abstract is defective, because it is only of a part of a record, when it ought to be of the whole, and so certified.  It is a part only of a copy of a copy.  The attempt to infer the spuriousness of the warrants from the identity of the numbers, was justly repelled, because the same numbers are often given to many warrants, and it can seldom be shown on what entry the grant issued.  The report of the select committee of the legislature was also inadmissible as evidence ; both because there is no proof that it was ever acted on by the house, and because the State of Tennessee had, at the time, no authority over the lands, North Carolina having retained the right of completing titles originating before the cession.  3. But, even supposing the grant under

- *a* Spalding v. Reeder, *Maryl. Rep.* 187.  1 *Hayw.* 106.  *Id.* 135.  *Id.* 359.  *Id.* 497.  3 *Hayw.* 215.  1 *Tenn. Rep.* 318. 2 *Tenn. Rep.* 25.  *Id.* 47.

  *b* 9 *Cranch*, 98.

which the defendants claim to have been fraudulent-
ly obtained by the original grantees, as they are *bona*
*fide* purchasers without notice, they are entitled to the
protection of the Court.[a]   The Courts of Tennessee
have established the doctrine, that even in the case
of a void grant, a junior grantee shall not avail him-
self of its nullity as against an innocent purchaser
without notice.[b]

Mr. Justice JOHNSON delivered the opinion of the
Court.  Both these titles are founded on what are
called removed warrants, and *priority* of entry is
altogether immaterial to the issue.   But the *exist-
ence* of an entry, it is contended on behalf of the plain-
tiff, is indispensable to the issuing of a warrant of
survey, and to the validity of grants, which ought by
law to have their origin in such entries.   With a
view, therefore, to impeach the prior grant to Sevier,
under which these defendants claim, the plaintiff
proposes to prove, that there never were in fact any
entries made to justify the issuing of the warrants
under which their title had its inception.   It has been
also suggested, that his intention further was to
prove the warrants themselves forgeries.   But this
does not appear from the bill of exceptions, as will
be more particularly shown when we come to ana-
lyze it, with a view of determining what evidence
appears to have been rejected in the Circuit
Court.

a Fletcher v. Peck, 6 *Cranch*, 133.
b Miller v. Holt, 1 *Tenn. Rep.* 111.

1820.

Polk's Les-
see
v.
Wendell.

The evidence offered in the Court below, with a view to invalidating Sevier's grant, was rejected, and on the writ of error to this Court, one general question arises, whether any, and if any, what evidence of facts, prior to the issuing of a grant, shall be received to invalidate it?

Authority of local decisions upon the laws of real property in this Court.

When the case was before this Court, in the year 1815, the same question was brought to its notice, and received its most earnest and anxious attention. Long experience had satisfied the mind of every member of the Court, of the glaring impolicy of ever admitting an inquiry beyond the dates of the grants under which lands are claimed. But the peculiar situation of Kentucky and Tennessee, with relation to the parent States of Virginia and North Carolina, and the statutory provisions and course of decisions that have grown out of that relation, has imposed upon this Court the necessity of pursuing a course which nothing but necessity could have reconciled to its ideas of law or policy. The sole object for which jurisdiction of cases, between citizens of different states, is vested in the Courts of the United States, is to secure to all the administration of justice, upon the same principles on which it is administered between citizens of the same State. Hence, this Court has never hesitated to conform to the settled doctrines of the States on landed property, where they are fixed, and can be satisfactorily ascertained; nor would it ever be led to deviate from them, in any case that bore the semblance of impartial justice.

Decision of this Court, S. C., 9 *Cranch,* 87, reconciled with the present case.

It has been supposed, that in the former decision alluded to in this case, this Court has gone beyond

the decisions of the Courts of Tennessee, in opening the door to inquiries into circumstances occurring prior to the issuing of a grant.

An attentive perusal of that decision will detect the error; or prove, if it has done so, it has done it on principles that cannot be controverted.

It is obvious from the report of the decision, that it was at that time presented under an aspect somewhat different from that in which it now appears. The *forgery* of the warrants constituted a part of the case which the plaintiff was precluded from making out in evidence. And to collect the purport of the decision, at that time rendered, the best resort will be to the words in which it is delivered.

Two sentences will give the substance of that decision. They are expressed in the following words: "But there are cases in which a grant is absolutely void; as where the State has no title to the thing granted, or where the officer had no authority to issue the grant. In such cases, the validity of the grant is necessarily examinable at law." And " If, as the plaintiff offered to prove, the entries were never made, and the warrants were forgeries, then no right accrued under the act of 1777; no purchase of the land was made from the State; and *independent of the act of cession* to the United States, the grant is void by the express words of the law."

These two sentences comprise the substance of that decision. For, as to the doubts expressed in the last paragraph of the opinion, relative to the inception of a right in the ceded territory prior to the cession, it is but a doubt, and is removed by a reference

to the 6th section of the act of 1784. As to the question what evidence shall be sufficient to prove the existence of the entry, the Court is silent. As to what validity shall be given to the grants emanating from North Carolina, the decision places it upon the statutes of North Carolina. And although an opinion is expressed that North Carolina could make no new grants after the cession, who could have entertained a doubt upon that question? The right reserved to her was to perfect incipient grants; but what restraint is imposed upon her discretion? or what doubt suggested of her good faith in executing that power?

It will be perceived, that as to *irregularities* committed by the officers of government prior to the grant, the Court does not express a doubt but that the government, and not the individual, must bear the consequences resulting from them. On the contrary, it declares, that the existence of the grant is, in itself, a sufficient ground, from which every man may infer that every prerequisite has been performed. All, then, that it decides is, that an entry was indispensable as the inception of a title to Sevier; that if an original grant had issued to him after the cession, or a title had been perfected where there was no incipient title before the cession, as in the case of a grant on a forged warrant, and no entry, that it would be void. But, in admitting that the grant shall support the presumption that every prerequisite existed, it necessarily admits, that a warrant shall be evidence of the existence of an entry. Nor is it by any means conclusive to the contrary, that the entry does not appear

upon the abstract of entries in Washington county, recorded in the Secretary's office. On the contrary, if the warrants issued are signed by the entry-taker, it is conclusive that the locations were received by him, and if he omitted to enter them, his neglect ought not to prejudice the rights of him in whose favour the warrants were issued.

That an entry is necessary to give validity to these grants, we think not only perfectly deducible from the statutory provisions in force in Tennessee, but also, from the legal adjudications of their Courts. Nay, they have not assumed the principle, that the issuing of the grant shall be deemed a recognition of the legal sufficiency of an entry; but have decided a grant void which emanated from an entry not sanctioned by the statutes of North Carolina, though the grant was issued when it might have lawfully issued. (Jackson v. Honeycut, 1 *Tenn. Rep.* 30.) And in the case of Dodson v. Cock and Stewart, so much relied on in the argument, the legal validity of a grant is expressly referred to the validity of the entry at the time it was made. (*Id.* 232.) It would indeed, be wonderful if it were otherwise, since it is the acknowledged law of Tennessee, that a prior entry will give precedence to a junior grant: a principle which obviously supposes the entry to be of the essence of the transfer of property; the grant, that which gives it palpable existence; or, at least, that it holds the freehold in abeyance, ready to vest upon the contingency of the expected grant.

It has, also, been asserted, that the Courts of the State of Tennessee have frequently, and uniformly,

decided directly the reverse of the opinion of the Supreme Court. This assertion has reference to that part of the opinion which declares, that a grant issuing " without entry, and on forged warrants," is a void grant. Such an idea could only have resulted from inattention to the obvious distinction between the acts of the State's agents or officers, and the impositions practised upon them: between the case of a right really incipient, and that where no right ever did exist. How could the State of North Carolina have been performing an act toward *perfecting a right*, where, by the supposed case, no right could possibly have existed, no entry ever was made, and the warrant forged? A new grant, it must be admitted, she could not have made : but would not this have been a new grant? We will respect the decisions of the State tribunals, but there are limits which no Court can transcend.

But the Courts of Tennessee have not so decided. In the case of Dodson v. Cocke and Stewart, it will be found that the marginal note of the decision is too general in its expression, and that the Court decides nothing but what has been expressly admitted by this Court, since the legal validity of the entry is made the very basis of that decision. So of the case of Sevier and Anderson v. Hill, the only point on which the judges seem to have coincided was, that no other consideration should be proved than what the grant expressed on the face of it, (see the opinion of Judge Humphreys.) If any other point is decided, it is immaterial to the present question.

This Court disavows having ever decided more than that an entry, or other legal incipiency of title, was necessary to the validity of a grant issued by North Carolina, for lands in Tennessee, after the separation. They have never expressed an inclination to let in inquiries into the frauds, irregularities, acts of negligence, or of ignorance of the officers of government, prior to the issuing of the grant; but, on the contrary, have expressed the opinion, that the government must bear the consequences. But while they admit that a genuine warrant shall be in itself the evidence of an entry, they cannot yield to the absurdity of attaching that effect to a forged warrant.

1820.

Polk's Lessee
v.
Wendell.

With regard to the decisions of the State of North Carolina, it is a well known fact, that on the subject of the effect of entries, the Courts of the two States are at direct variance. And, singular as it may seem, opposite constructions of the same laws constitute rules of decision to their respective Courts. And if it is the law upon their own citizens, we are willing to apply the same rules of property to all others. But even the Courts of that State, in their rigid adherence to the dates and effect of grants, and the principle that they are not void but voidable, are sometimes driven to the most awkward shifts in adjudicating on cases affected by the act of 1777. Thus, in the Trustees of the University v. Sawyer, (*Taylor's Rep.* 114.) they have said, that although " they cannot declare a grant void, they will adjudge that the grantee takes nothing under it." And in a case decided in 1802, (*N. Carolina Rep.* 441.) they

have found themselves compelled, under their acts of 1777, 1778, and 1783, to declare a grant absolutely void, on the ground of the invalidity of the entry with reference to facts that required the intervention of a jury. So that it would seem even in North Carolina, a valid entry was indispensable to a valid grant. That priority of entry would not give priority to a junior grant, is certainly decided in the case of Williams v. Wells, reported in the *North Carolina Law Repository*, 383. But even that point, it would seem, had not been well established as a principle of law, since the jury in that case, (which is a recent one,) manifested their dissatisfaction with the charge of the Court, by finding against it.

*Bona fide* purchaser without notice, under a void grant, protected by the law of Tennessee.

There was one point made in the argument of this case, which, from its general importance, merits our serious attention, and which may have entered into the views of the Circuit Court in making their decision. It was, whether, admitting this grant to be void, innocent purchasers without notice, holding under it, should be affected by its nullity?

This would seem to depend on the question, whether we shall, as to innocent purchasers, view it as a void or voidable grant.

On general principles, it is incontestable, that a grantee can convey no more than he possesses. Hence, those who came in under the holder of a void grant, can acquire nothing. But it is clear that the Courts of the State of Tennessee have held otherwise. In Miller v. Holt, (1 *Tenn. Rep.* 111.) it is expressly adjudged, that whether a grant be

void or voidable, a junior grantee shall not avail himself of its nullity as against an innocent purchaser without notice. Yet the North Carolina act of 1777, certainly declares grants, obtained by fraud, to be absolutely void. And the same result must follow, where the State has relinquished its power to grant, or no law exists to support the validity of a grant. But it seems that the Courts of Tennessee have adopted this distinction, that grants in such cases shall be deemed void only as against the State, and not then until adjudged so by some process of law. That as between individuals, the title shall be held to vest *sub modo*, and innocent purchasers, without notice, shall not be ousted by the intervention of a subsequent grantee.

If this be the settled law of Tennessee, we are satisfied that it should rest on the authority of adjudication. There is certainly a palpable distinction between the cases of an original grantee, and a subsequent purchaser without notice. There can be no reason why the grantee should be favoured by the leaning of Courts; but the latter, finding the grantee in possession of the patent of the State, which on its face presents nothing to put him on his guard, has strong claims upon the favour of Courts, and the justice of the country.

Upon analysing the bill of exceptions, it will be found, that the plaintiff does not propose to prove in express terms, that the warrants in this case were forgeries. But, with a view to proving that there were no entries to authorize the issuing of the warrants, he tenders various certified documents from

1820.

Polk's Lessee
v.
Wendell.

The evidence rejected, how far competent.

the several offices of North Carolina and Tennessee, from which he would raise an inference, that it was impossible that such entries could have existed ; and then tenders parol evidence to prove, that the locations on which the warrants purport to have issued had never been passed to entry, and together with the warrants and surveys founded upon them had been rejected by a particular entry-taker, (the successor of him who is supposed to have issued these warrants,) on the ground of their being spurious and invalid. Also, that they had been reported as spurious by a committee of the Tennessee legislature.

As the exception does not come up, on a misdirection of the Court, but generally on the rejection of the evidence offered, the only remaining questions arise on its legal competency.

And, first, we are of opinion, that the document marked K. in the transcript of the record, was competent evidence to prove the fact of the existence of the entries therein specified, and so far it ought to have been admitted, because it is expressly made evidence by the act of the 21st of September, 1801. But, as far as a negative use was intended to be made of that abstract, we are of opinion, the certificate of the officer was properly rejected. There is no such effect given either to that document, or the clerk's certificate, by any legislative act, and such an effect could only be given to the production of the whole abstract, from which the Court might, by inspection, have ascertained the fact of the non-existence of the contested entries ; or from an exami-

nation of the keeper of that document as an ordinary witness, or inspection of it made under a commission.

1820.

Polk's Les-
see
v.
Wendell.

The documents offered, marked H. and L. were numerous certificates from the secretary's office of North Carolina, of warrants and grants, introduced to prove, that on the entries of the dates specified as the dates of the entries to Sevier, other warrants issued, and other grants were obtained in the name of various individuals, but none to Sevier. This evidence, also, we are of opinion, was competent circumstantial evidence, and ought not to have been wholly rejected,

With regard to the report of the committee of the house, we can hardly think it could have been seriously offered ; and the parol evidence respecting the rejection by the subsequent entry-taker, was, also, properly rejected, inasmuch as the rejection of the return of these warrants and surveys, was a perfectly immaterial circumstance upon this issue. It might as well have been the result of that entry-taker's folly, or his wrong, as of any other cause. The emanation of the grant is sufficient evidence that the claim of Seveir must have met with a more favourable reception from a higher quarter. Upon the whole, the only ground on which we could sustain the decision in the Court below is, *that a subsequent purchaser without notice is not to be affected by any legal defects in a grant which might have issued conformably to existing laws.* For, in that case, all the evidence rejected may have been immaterial to the issue. But, *non constat.* that the evidence rejected

was not connected with proof to rebut that defence. It is, therefore, not necessary here to decide definitively on that point of the law. If it is the received doctrine of the Tennessee Courts, we have expressed our inclination not to shake it. But the cause must necessarily be sent back upon the rejection of the documents marked H. K. & L.

Judgment reversed.

JUDGMENT. This cause came on to be heard on the transcript of the record of the Circuit Court for the district of West Tennessee, and was argued by counsel. On consideration whereof, it is the opinion of this Court, that there is error in the proceedings of the said Circuit Court, in rejecting the documents marked in the transcript of the record with the letters H. K. and L., as incompetent evidence. It is, therefore, ADJUDGED and ORDERED, that the judgment of the Circuit Court, for the district of West Tennessee, in this case, be, and the same is hereby, reversed and annulled. And it is further ordered, that the said cause be remanded to the said Circuit Court, with directions to award a *venire facias de novo.*