STEPHEN W. REEDER AND OTHERS *v.* JOHN T. BARR AND OTHERS.

A patent issued to N., *assignee of the administrator of H. R., deceased:* Held,
   that a subsequent purchaser can not set up the plea of innocent purchase,
   without notice, against the heirs of H. R.

THIS was a suit in chancery, reserved for decision by the Supreme Court in Hamilton county.

The bill sets forth that the complainants are the heirs at law of one Henson Reeder, who died in the year 1811. That some time in the year 1810, Henson Reeder purchased a certain lot of land, in the city of Cincinnati, of the United States, and paid up a part of the whole of the purchase money, and obtained a certificate therefor, in the usual form, and took possession thereof. Some time after the death of Henson Reeder, Samuel Newell set 447] up some claim to said *lot, as assignee of the administrator of Henson Reeder; and by falsely representing himself as such assignee, obtained a patent for the lot in his own name; that the administrator of Henson Reeder never sold, directly or indirectly, said certificate, or any interest whatever in the lot, to Newell, or any other person, and had no power so to do. That Newell took forcible possession of the land, and retained the same until 1823, when it was sold upon execution, as the property of Newell, to the defendants, John T. Barr and Thomas Welch.

The bill also charges that the defendants, Barr and Welch, when they purchased, had notice that Newell claimed title only as assignee of the administrator of Henson Reeder; that his title is so recited in the patent, and knew also that said administrator did never, in fact, assign any interest in the lot to Newell.

It is also charged that the patent was fraudulently obtained, and the President of the United States imposed upon.

The patent was issued on August 15, 1816, to Newell, *as assignee of the administrator of Henson Reeder, deceased.* The bill prayed for an account of the rents and profits, and for a reconveyance of the title.

The defendant, Barr, filed his plea in bar, alleging that on December 8, 1819, Newell being in the quiet possession of the lot, mortgaged it to Barr and Welch for a valuable consideration; that the mortgage became forfeited; a *scire facias* issued; a judg-

Reeder and others *v.* Barr and others.

ment was rendered, and the lot was taken in execution, and sold by the sheriff to Barr and Welch, and conveyed to them by the sheriff, on February 26, 1823; that Barr and Welch took possession; and on October 5, 1826, Welch, for a valuable consideration, conveyed all his interest in the lot to Barr, who has continued the possession ever since; that he had no notice whatever of the claim of the plaintiffs, or that Newell claimed title only as assignee of the administrator of Henson Reeder; or that his title was so recited in his patent; or that the administrator had not assigned the title of said lot to Newell, at or before the time when he, the said Barr, acquired his title, as herein set forth; and that he was an innocent purchaser, for valuable consideration, and without notice.

To this plea the plaintiffs filed a general replication.

*The defendant, Newell, answered, denying all fraud, and [**448** disclaiming title, the lot having been sold upon execution, as set forth in the plea in bar.

No testimony was taken.

STORER and Fox, for complainants:

The complainants contend, that inasmuch as the patent is granted to "*Samuel Newell, assignee of the administrator of Henson Reeder,*" and inasmuch as Barr claims under that deed, he is chargeable with notice, first, that Newell claimed title from a trustee merely; second, that the trustee could not dispose of any interest, in real estate, without an order of court for that purpose.

1. It is well settled, that "where a purchaser can not make out his title but through a deed which leads to a fact, he will be affected with notice of that fact." 2 Mad. Ch. 327; Beame's Plead. 252; 2 Schoale & Lefroy, 327; 13 Vesey, 117, 118; Newland on Contracts, 511. Inasmuch, therefore, as Barr can not make out his title without the patent, he is chargeable with notice that Newell purchased, or pretended to purchase, of an administrator.

2. Knowing that Newell purchased of an administrator, he was bound to know that no administrator, merely as such, had authority to dispose of real estate, except under an order of court; and, in taking the estate, he took it subject to all the equities to which it was subject in the hands of Newell.

If A. make a conveyance to B., with power of revocation by

will, a subsequent purchaser is intended to have notice of the will, as well as of the power of revocation.    Newland on Contracts, **511.**

So, where a purchaser claims under a conveyance, where there was an estate tail prior to the estate under which he purchases, it is incumbent on him to see if that estate is spent.    Id.

In 3 Johns. Ch. 344, the court decided that a purchaser purchasing under the commissioners of loans, who had special authority to sell in a particular mode, was bound to know whether the **449]**  sale was made in a regular or irregular *manner, and that he was affected by all irregularities in the sale.

In Lessee of Willis *v.* Bucher, 2 Binney, 455, the defendant claimed title under one William Willis, to whom a patent had issued, reciting that the title was derived under the will of Henry Willis.    On referring to this will, it was found that the will did not authorize a sale.

Several sales had been subsequently made to persons who were innocent purchasers, unless the recital in the patent charged them with notice.

The question, therefore, presented in the case before the court and in 2 Binney are exactly alike.    Judge Tilghman, in deciding this point (page 466), says: " The learned judge, who tried the cause, was of opinion that the purchasers were not bound to look further back than the patent; and, no doubt, this opinion must have had great weight with the jury.    This is a principle of very great importance, considering the vast mass of property which is held without patent in this commonwealth.    It may have very extensive and alarming consequences, if every purchaser from a patentee is to be considered as having *no notice*, and not bound to take notice of anything prior to the patent.    In cases like the present, *where the prior title is referred to in the patent, there is no reason why the purchaser should not take notice of it.*    The will of Henry Willis was recorded, and it was the fault of the purchasers not to examine it."

It appears to us that two cases more analogous can not be found than the one now before the court and the case last cited.    Both patents refer to the origin of the title claimed by the assignee. The sale was void in the one case, because the will did not authorize a sale.    The sale is void in the other case, because the law did not authorize a sale to be made by an administrator without an

Reeder and others *v.* Barr and others.

order of court. The plea admits there was no order of court granted. The law says, he is chargeable with notice of the fact that it was an administrator's sale. The purchaser, then, is placed in this situation: he buys of a person who he knows is not authorized to sell, and, of course, can not keep the property from the true owner.

*N. WRIGHT, contra:    [450.

If a purchaser can not make out a title but by a deed which leads to a *fact*, he shall be deemed cognizant of that fact. 2 Fonbl. Eq. 151.

The fact shown by Newell's patent is, that the administrator had assigned; nothing more. Sugden states the rule in the same way; and, for example, adds: "Therefore, if a man knows the legal estate is in a third person, he must take notice what the trust is." Sug. Fraud, 498.

"But the recital of a fact in a deed, which may or may not, according to circumstances, amount to a fraud, will not amount to notice." Sug. 500.

And the recital must be such a reference to the fact that "it will be deemed *crassa negligentia* that he sought not after it." Sug. 499.

2 Mad. Ch. 327, states the law in the same way.

Newland Con. 511, states it thus: "When the law imputes to the purchaser the knowledge of a fact, of which the exercise of common prudence and ordinary diligence must have apprised him." "Thus, if by looking into a deed, etc., in his claim of title, he must have been apprised of *a right in another person*, etc., notice is presumed."

Lord Erskine states it thus: "Another case is, where the law imputes that notice, which, from the nature of the transaction, every person of *ordinary prudence* must necessarily have." Thirn *v.* Mill, 13 Ves. 120.

In support of the foregoing doctrines, as laid down in the elementary books, Newland cites: Ferrars *v.* Cherry, 2 Term, 384; Morret *v.* Paske, 2 Atk. 54; Coffin *v.* Fannyhough, 2 Bro. C. C. 291; Tanner *v.* Florence, 1 Ch. Cas. 259; Vane *v.* Barnard, Gilb. 8; Biscoe *v.* Banbary, 1 Ch. Cas. 28; Lowe *v.* Smith, 1 Atk. 490; 2 Ves. Jr. 440; Moore *v.* Bennet, 2 Ch. Cas. 246; 1 Ch. Cas. 291; 1 Atk. 522.

Fonblanque cites most of the same cases, and also Bovy *v.* Smith;

1 Term, 649; Druoch *v.* Kent, 1 Term, 319; Drapers Co. *v.* Yardley, 2 Term, 662; Martins *v.* Joliff, Amb. 313.

Sugden cites the same cases, and also 2 Frazier, 337; Kenny *v* Brown, 3 Ridgw. P. C. 512; 1 Durnf. & E. 763.

Maddock cites most of the same cases, and also 2 Anst. 431, 428; Eyre *v.* Dolphin, 2 Ball & B. 301.

451]　*In all these cases, so far as I have been able to examine them, the recital in the deed or will, which was held to be sufficient notice, was an express and direct recital of the equitable right sought to be established, or a reference to some other deed which expressly stated the right. The right was expressly shown. In the case now before the court the patent shows no right in another.

In Beame, the law is thus laid down: " Constructive notice is no more than evidence of notice, the presumptions of which are so *violent* that the court will not allow even of its being controverted." Beame's Pl. Eq. 252.

I consider it clear, from the foregoing cases, as well as from reason, that the rules of law, on which complainant relies, go no further than this: that the chain of title must show, by *express recital*, the equitable title set up or the fraud charged, or must refer to some other instrument or fact, showing such title or fraud, in such a way that the purchaser could not, without *gross negligence*, avoid noticing it.

In the present case, the patent does not recite any title in another nor any fraud; and the only question must be, whether it refers to any other fact in such a way that the purchaser is chargeable with gross negligence for not noticing that fact. By gross negligence I am willing to be understood to mean, the want of that prudence which a man of *common prudence and ordinary diligence* would use.

The recital is, that *Newell was the assignee of the administrator of H. Reeder.* The law authorized the administrator to make sale of the land on complying with certain forms, etc. The purchaser had a right to presume that the administrator, who acted under an oath of office, had done his duty, and obtained the proper order of court; there was nothing in this recital, therefore, calculated to alarm him; nothing which would naturally suggest to him the idea that there was any defect in the assignment, or any fraud; nothing which would put a man of ordinary prudence upon inquiry for such objections.

Reeder and others *v.* Barr and others.

Again : the officers of the United States act officially in issuing the patent, and are required, by law, to see that the assignment was duly made before a patent could issue to the assignee.  The purchaser had a right to presume that they \*also had done  [452 their duty, and that they had issued the patent upon legal assign-ments.  So far, therefore, from being led, by the recital, to suspect any defect or fraud in the assignment, the presumption of law, as well as the common understanding of men, would be that the as-signment was right and fair.

The presumptions of law always are, that a man has conformed to his duty, not that he has been guilty of fraud.  3 Stark. Ev. 1249.  " *Omnia presumuntur rite et solemniter acta; donec probitur in contrarium.*"  Stark. Ev. 1248, 1250.  " *Odiosa et inhonesta non sunt in lege presumunda.*"  Stark. Ev. 378; 10 East, 216.  "The pre-sumption is that he has conformed to the law."

"A person shall be presumed duly to execute his office till the contrary appear."   Williams *v.* E. J. Co., 3 East, 200.

" If a person is required to do an act, the omission of which would make him guilty of a culpable neglect of duty, it ought to be intended that he has duly performed it."   Hartwell *v.* Root, 19 Johns. 347.

So in relation to the effect of a patent, the presumptions are equally favorable.

Chief Justice Marshall says, "The laws for the sale of public lands provide many guards to secure the regularity of grants and protect the incipient rights of individuals, etc.; that every pre-requisite has been performed, is an inference properly deducible, and *which every man has a right to draw* from the existence of the grant itself."  Polk's Lessee *v.* Wendell, 9 Cran. 98.

Justice Johnson says, "The existence of the grant itself is, in itself, a sufficient ground, from which every man may infer that every prerequisite has been performed."  S. C., 5 Wheat. 304; Patterson *v.* Jenks, 2 Pet. 237.

The presumption is, that an agent, intrusted to execute a par-ticular authority, has done everything requisite for the comple-tion of it.  Boville *v.* Bradbury, 2 Stark. 136;  Pat. Ag. 4.

Such being the legal presumptions, surely the purchaser could not be chargeable with gross negligence, because he did not pre-sume differently; because he did not perceive, in the recital, any intimation which would lead him to inquire \*into the suf-  [453

ficiency of the assignment. Prior to the time Judge McLean was in the land office·it is probable that most of the assignments of land certificates by administrators were informal; but, I believe, it has never been thought of, that a subsequent purchaser after the patent was bound to inquire into their regularity, and they must all have recited the same fact as appears in this patent.

An innocent purchaser, without notice, is a favorite in equity. No step shall be taken against him; he shall be protected, unless the proof is full and satisfactory. If the evidence is loose, and only creates a suspicion, courts will not act upon it; and the recital of a fact, which may or may not amount to a fraud, according to circumstances, is not notice. 2 Ves. Jr. 458; Eyre *v.* Dolphin, 2 Ball & B. 301; 8 Johns. 108; 2 Mad. Ch. 327; Sug. Vend. 500.

The recital in the patent shows certainly no more than this last rule requires. For, if there were even no legal presumptions in favor of the regularity of the assignment, the most that could be said, would be, that it might, or might not, be regular, according to circumstances.

In Frost *v.* Beckman, a mortgage for three thousand dollars was recorded as for three hundred only, and held it was good against a purchaser only for three hundred dollars. There the purchaser had notice of the mortgage, and it might as well have been said that he was bound to see the original mortgage itself; but held that he had a right to believe the recorder had done his duty. 1 Johns. Ch. 288.

The result of my argument is, that the recital in the patent in question is not the recital of any *right* or *interest* existing in Reeder's heirs. It recites merely the fact that the administrator had made the assignment; and, of course, the only question is, whether, with knowledge of that fact, the purchaser is chargeable with such gross negligence for not looking into the administrator's proceedings, that his title can now be defeated by the administrator's default; and I insist that the purchaser is not so put upon his guard by the recital as to be chargeable with the defaults of the administrator: *First.* Because he has a right to suppose that the administrator, acting under a judicial appointment, and the infliction of 454] an oath, has done his duty; and, *second.* Because *he has also a right to believe that the officers of the United States have done their duty.

Reeder and others *v.* Barr and others.

In this view of the case, I do not perceive the application of the case of Willis' Lessee *v.* Bucher, 2 Bin. 455, cited by the other side. In the first place, it is evident in that case that the patent by its recitals showed distinctly that all the right of William Willis, the patentee, was his right as devisee, under the will of his father. That will show that he had an estate tail, and not a fee. Had the present case recited the purchaser to be *devisee* of Reeder, the case might, perhaps, be different; for then the legal presumption that the administrator had done his duty would not arise. The devisee of an estate tail would be entitled, of course, to the patent; and, whether the interests of the tenant in tail could be otherwise protected in the patent, under a will of doubtful construction, than by reference to the will as the foundation of the title, is, at least, questionable. We are not informed of the extent of the recitals in that case. If they were such as evidently to guard the rights of all parties, the decision of the court merely carried into effect the purport of the patent.

Again: It appears from the arguments of counsel in that case, that the land in question was *proprietary* lands; it was sold as early as 1737, or 1744; it was the property of individuals, not of government, and, though the deed perfecting the title is called a patent, it does not appear that such patent was issued under any sanctions of public law; that it passed the hands of any officer in whose correctness and fidelity the public had a right to rely. So far as appears, it was the mere private deed of the proprietors, and so the defendants' counsel speak of it.

Again: The judge himself, in giving his opinion, relies upon the peculiar situation of titles in that state; and the counsel speak of the warrant, with payment of purchase money, as giving a legal title, according to their construction, and of the question of notice, overreaching the patent, as a question settled in practice in that state with reference to the peculiar situation of that description of titles. It is evident, therefore, that the decision turns upon local circumstances in part, if not altogether.

*Either of the foregoing considerations is sufficient to dis- [455 tinguish the case in Binney from the present. Others might be urged, but it is hardly necessary, for a case so equivocal can not weigh much against clear law.

Fox, in reply:

The opposite counsel seems to think that it is necessary, wherever the plea of innocent purchase is put in, for the plaintiff to show such circumstances of notice as to charge the defendant with gross neglect. But such is not the law; if it were, purchasers *pendente lite* could never be affected; for I know of no case where a purchaser, *pendente lite*, has been affected on the ground of his being negligent. On the contrary, the great principle upon which all *pendente lite* purchasers are chargeable with notice is public policy. There would be no end of suits, if a defendant could transfer his legal title to an innocent purchaser as soon as a bill was filed against him to obtain that legal title. 3 Ohio, 542.

The same may be said where a man is chargeable with notice given to his agent and the agent neglects to inform his principal. The principal is bound, but not because he was guilty of gross neglect, but because a man might be in a better situation, by employing another person to purchase, than if he attended to the purchase himself.

It is laid down in Sugden, that the recital in a deed of a fact, which may, or may not, according to circumstances, be held in a court of equity to amount to fraud, will not amount to notice. Sugden refers to 3 Ridgw. 512, a book not to be found in Cincinnati, and it is certainly difficult to tell what the writer means by this short note. Notice of a fact which may, or may not amount to fraud, will not charge the party with notice. I can not tell what it means. "If A. makes a conveyance to B., with power of revocation by will, a subsequent purchaser is intended to have notice of the will, as well as of the power to revoke." Newland on Contracts, 511, 512, and other cases cited.

Cases in 9 Cranch, 5 Wheaton, and 2 Peters are cited to show 456] *that when a patent has issued, every man may infer that every prerequisite has been performed.

This position is true, in one sense, and in one only. So far as the government is concerned, I admit it is to be presumed that they have received payment for the land, that a proper survey has been filed, etc. But it is evidence of nothing as to third persons. And the reason of this obvious. The person issuing the patent is a mere ministerial officer.

That I am correct in this position, will appear manifest, by referring to the numerous cases of equity, where a person having an

Reeder and others *v.* Barr and others.

elder entry, comes into court to obtain relief, against an elder patent on a younger entry.

If the presumption is, that the officer issuing the patent acted correctly; and if you can not go behind the patent, on what authority is it, that the court acts in taking away the legal title from the elder patentee, and giving it to the younger. May the courts go further, and say that the plea of innocent purchase is not a good plea in such cases?

The case in 9 Cranch, 98, merely decides that, as to all matters, merely directory to the officers, the court will presume the directions of the statute have been complied with, after patent in an action at law.

But the court say, "there are some things so essential to the validity of the contract, that the great principle of justice and of law would be violated, did there not exist some tribunal to which an injured party might appeal." And they conclude the proper tribunal is a court of equity.

And by examining the case in Cranch a little further, the court will see it is directly in favor of the position we take. For they say, "If, as the plaintiff offered to prove, the entries were never made, and the warrants were forgeries, then no right accrued under the act of 1777; no purchase of the land was made from the state, and independent of the act of cession to the United States, the grant is void by the express words of the law."

What, then, becomes of the presumptions in favor of a patent arising from the mere issuing of the patent. In a case at law, the Supreme Court decided a patent to be void, merely because the officer had issued it upon forged warrants and entries.

*The case referred to by Mr. Wright, in 5 Wheaton, is the [457 same as that in 9 Cranch, and the words quoted by Mr. Wright are a part of a quotation from the judge's opinion in 9 Cranch.

We think that the very object of requiring the names of the assignors and assignees to be mentioned in all the patents is for the purpose of preventing frauds being committed; and if it appears a patent has been obtained on a forged assignment, or on an assignment made by a person having no authority to make it, the patent has been issued *without authority*, for a patent can only be issued to the original purchaser, his heirs, or assigns. Suppose a patent issues to A. B. & Co., as heirs of D., when, in fact, E. was the true heir, can it be possible that E. is to be cheated out of his

rights by such a contrivance? Unquestionably the court would say the patentee is bound, in a suit brought by the real heir, to give up his title.

The great error in Mr. Wright's argument is this: he appears to treat the case as though an administrator, merely as such, has power to convey interests in real estate, whereas the reverse is the truth of the case; and this distinction must be kept strictly in view. Whenever the title to property vests in an administrator, and he disposes of it, he will be presumed to have disposed of it properly, because he *had authority* to dispose of it. But real estate does not vest in an administrator. He has no power to sell as an administrator; and if a person claims title under an administrator, he must show that the administrator has obtained *authority to sell.* The court may presume that a power has been correctly executed in some cases, but they never will presume that a power was *created.* This principle runs through all the cases, and has been acted upon frequently. Take the position of Mr. Wright to be correct—that the administrators will be presumed to have acted under a power—and the court must overrule everything which has been decided with regard to such sales.

If an administrator makes a deed for land, according to this doctrine, no order of court need be shown, for it is to be presumed he had one. But this court, in Lessee of Goforth v. Longworth, last court in bank, think differently. 4 Ohio, 120.

458] *Again: In sales by sheriff, if a deed is made, the court are to presume a judgment and execution. Yet this court have decided that a judgment and execution, and an order confirming the sale, must be shown.

To conclude, then, we take this to be the law: that where a person purchases under one not owning the property himself, but relying on the sufficiency of a power to sell, the vendee, and those claiming under him, must be charged with a full knowledge of the extent of that power, and if there is no power, the sale is void.

We have not argued the question as to the power of the court to grant an order for the sale of a mere equity to administrators. Our opinion has been that in 1816 the court had no such power. If the court are of this opinion it makes our case stronger.

By the COURT:

The patent was issued to Newell, *as assignee of the administrator*
418

*of Henson Reeder, deceased;* and the only question is, whether this disclosure of the rights of the patentee, and of the manner in which they were acquired, is sufficient to charge a subsequent purchaser, with notice of the equitable rights of the complainants, as heirs at law of Henson Reeder. The true rule upon this subject appears to be "that the law imputes that notice, which, from the nature of the transaction, every person of ordinary prudence must necessarily have." 13 Ves. 120; Mad. Ch. 327; Newland, 511.

If, in the investigation of a title, a purchaser, with common prudence, must have been apprised of another right, notice of that right is presumed. Here, Barr, in tracing his title, must have seen from the patent that Newell's right was derived from an administrator who possessed no title to the land himself, and whose deed could be available only by a previous compliance with certain legal formalities. If the assignment of an administrator, *per se,* conveyed the equitable rights of the intestate, the purchaser might stand in a different situation. As it is, we are of opinion that the recital in the patent is sufficient to put a man of ordinary prudence to an inquiry for the rights of the heirs, and that a subsequent *purchaser must, at his peril, ascertain [459 whether those rights have been regularly extinguished.

Authorities are cited to show, that presumptions of regularity are to be made in favor of public officers. 3 East, 200; 19 Johns. 347. And that the existence of a grant is sufficient ground to presume that every prerequisite has been performed. 9 Cranch, 98; 5 Wheat. 304. If this grant were a simple conveyance to Newell, his assignees might, perhaps, claim the benefit of these rules; but the grant, upon its face, shows that the heirs of Reeder were the owners of the estate, after the death of their ancestor; and it is going too far to say, that there is a legal presumption, not only that the officers of government have performed their duties, but that the rights of the heirs of Reeder have been divested by a judgment of a court of competent jurssdiction.(*a*)

Plea overruled.

(*a*) Purchasers under letters patent, reciting a trust, are bound to take notice of the trust at their peril. 1 Ves. 261, 319; 1 Ch. Cas. 258. So a purchaser under persons authorized by statute to sell, is persumed to know the nature and extent of the authority, and purchases at his peril. 3 Johns. Ch. 344.