Treat, C. J. This was an action of ejectment, brought by James McFadden against Charles Ballance, to recover a lot of ground in the city of Peoria. A trial resulted in a verdict and judgment for the plaintiff. Various exceptions were taken by the defendant during the progress of the trial, and he now brings the record into this Court by appeal. For a proper understanding of the case, it will be necessary to set forth at some length, the evidence on which the plaintiff’s claim of title is founded. On the 15th of May, 1820, Congress passed “An act for the relief of the inhabitants of the village of Peoria, in the State of Illinois,” which was as follows: “ That every person, or the legal representatives of every person, who claims a lot or lots in the village of Peoria, in the State of Illinois, shall, on or before the first day of October next, deliver to the register of the land office for the district of Edwardsville, a notice in writing of his or her claim; and it shall be the duty of the said register to make to the Secretary of the Treasury a report of all claims filed with the said register, with the substance of the evidence in support thereof; and also his opinion, and such remarks as he may think proper to make; which report, together with a list of the claims which, in the opinion of the said register, ought to be confirmed, shall be laid by the Secretary of the Treasury before Congress, for their determination. And the said register shall be allowed twenty-five cents for each claim on which a decision shall be made, whether such decision shall be in favor of or against the claims; which allowance shall be in full for his services under this act.” On the 10th of Hovember, 1820, Edward Coles, register of the land office at Edwardsville, made a report to the Secretary of the Treasury, of his proceedings under this act of Congress. He reported each claim, and the substance of the evidence adduced in its support, but declined to give any opinion as to which of the claims should be confirmed. The claims connected with this case are thus stated in the report. “ Ho. 1. Etienne Bernard claims a lot in the village of Peoria,containing about one arpent of land, situate about forty or fifty yards south of the lot of Joseph Grraveline, and bounded eastwardlv by a road or street, separating it from the lower part of Lake Peoria; southwardly by a road separating it from a lot occupied by John Baptiste Maillot, and westwardly and northwardly by commons or prairie.” “Ho. 11. Louis Pilette, in right of his wife, Angelica, the daughter of the late Francis Wilette, of the village of Peoria, claims a lot in Peoria, containing about one-half of an arpent of land, and bounded northwardly by a street, eastwardly by a lot of Antoine Dcschamps, southwardly by a street separating it from the Blinois river, and westwardly by a street.” “Ho. 41. Felix Fontaine claims a lot in Peoria, of eighty feet in front, by three hundred feet in depth, (French measure,) and bounded eastwardly by a street separating it from Lake Peoria, northwardly by a lot formerly occupied by Antoine Deschampa, but now claimed by him, Fontaine, and to the south and west by streets.” “No. 42. Felix Fontaine, in right of his wife, Josette Carsereaudit Fontaine, claims a lot in Peoria, of eighty feet in front by three hundred feet in depth, (French measure,) and bounded eastwardly by a street separating it from Lake Peoria, northwardly by a lot claimed by the heirs of La Bonshier, westwardly by a street, and southwardly by a lot on which he (Fontaine) lived.” The proof reported . by the register in connection with these claims need not be set out. Claim one covers the same ground as claims forty-one and forty-two; and claim eleven includes the same ground as claim forty-one. The premises in controversy in the present case are a part of claim forty-two. On the 3d of March, 1823, Congress passed “An act to confirm certain claims to lots in the village of Peoria, in the State of Illinois,” which was as follows: “Sec. 1. That there is hereby granted to each of the French and Canadian inhabitants and other settlers in the village of Peoria, in the State- of Illinois, whose claims are contained in a report made by the register of the land office at Edwardsville, in pursuance of the act of Congress, approved May the fifteenth, one thousand eight hundred and twenty, and who had settled on a lot in the village afbresaid, prior to the first day of January, one thousand eight hundred and thirteen, and. who have not heretofore received a confirmation of claims, or donation of any tract of land or village lot from the United States, the lot so set-, tied upon and improved, where the same shall not exceed two acres, and where the same shall exceed two acres,, every such claimant shall be confirmed in a quantity not exceeding ten acres: Provided, nothing in this act contained shall be so construed as to affect the right, if any such there be, of any other person or persons to the said lots, or any part of them, derived from the United States, or any other source whatever, or as a pledge on the part of the United States, to make good any deficiency occasioned by any other interfering claim or claims.” “Sec. 2. That it shall be the duty of the surveyor of the public lands of the United States for that district, to cause a survey to be made of the several lots, and to designate on a plat thereof the lot confirmed and set apart to each claimant, and forward the same to the Secretary of the Treasury, who shall cause patents to be issued in favor of such claimants, as in other cases.” The survey required to be made by the second section of this act, was approved by the surveyor general, on the 1st of September, 1840. On the 28th of August, 1845, a patent was issued to the legal representatives of Francis Wilette, for the lots covered by claims one, eleven, forty-one, and forty-two. It recited: “Whereas there has been deposited in the general land office, a certificate numbered two of the register and receiver of the land office at Edwardsville, Illinois, whereby it appears that in the report, dated 10th of November, 1820, of Edward Coles, register of the land office at Edwardsville, Illinois, the claim of Etienne Bernard is entered as number one; the claim of Louis Pilette in right of his wife, Angelica, the daughter of the late Francis Wilette,. is entered as number eleven; the claim of Felix Fontaine is entered as number forty-one, (the said numbers eleven and forty-.one,. according to the survey, being for the same land,, and covering the south west part of claim number one;) and the claim of Felix Fontaine is entered as number forty-two,.(covering, according to the survey, the north-east part of claim number one); and whereas, it further appears from the certificate aforesaid, that the said Francis Wilette is the inhabitant or rsettler within the purview of the confirmatory act of Congress, approved 3d March, 1823, entitled, “ An act to confirm certain claims to lots in the village of Peoria, in the State of Illinois;” and that it has appeared to the satisfaction of the said register and receiver, that the said inhabitant or settler did not, prior to the said act of' 3d March, 1823, receive “a confirmation of claims, or donation of any tract of land or Milage lot from the United States;” and that the legal representatives of the said Francis Wilette, in virtue of the confirmatory act aforesaid, are entitled to a patent fora certain lot described as follows, to wit: the lot containing fifty-four thousand eight hundred and ninety-eight square feet, and' fourteen-hundredths of a square foot, surveyed and designated as covered by said claims number one, eleven, forty-one and forty-two, in the south-east fractional of fractional section in township eight north, of range eight east of the fourth principal meridian, Illinois, according to the survey, approved 1st September, 1840, by the Surveyor of the public lands in the States of Illinois and Missouri.” And the patent then proceeds to grant the lot to “the legal representatives of the said Francis Wilette, and to their heirs.” After the introduction of this patent, the plaintiff read in evidence a deed from Bartholomew Fortier and Angelica his wife, dated the 17th of April, 1849, conveying the premises described in the patent to the plaintiff. He then proved by the depositions of Madeline Grlodon and Louis Le Compte, that Angelica Fortier was formerly the wife of Louis Pilette, and the only descendant of Francis Wilette. It will not become necessary to allude to the evidence introduced by the defendant. An exception was taken to the admission of the patent in evidence, and that may be considered as presenting the whole merits of the plaintiff’s case. The act of Congress of the 3d of March, 1828, confirmed only such claims as were contained in the report of the register. The act of the 15th of May, 1820, required his report to be laid before Congress for its consideration, and the claims included therein were exclusively the subject matter of the confirmatory act. The grant only operated to the bénefit of such persons as had presented their claims to the register, pursuant to the provisions of the first act. The lots thus specifically claimed were alone required to be surveyed. And patents were only authorized to be issued to the claimants thereof, or to their legal representatives. It was not enough, that a person was an actual settler prior to the 1st of January, 1813, and had not previous to the 3d of March, 1823, received from the United States a confirmation of a claim, or a donation of a tract of land or a village lot; but he must in addition have claimed the lot settled upon and improved, in order to bring himself within the provisions of „ the confirmatory act. Ho other persons were entitled to the benefits of that act. The report of the register, and the patent in question, both show that neither Wilette, nor his legal representatives, ever made any claim to lot forty-two; but, on the other hand, they clearly show that Bernard and Fontaine were the sole claimants. The Secretary of the Treasury, on the assumption that Wilette was the settler within the purview of these acts of Congress, caused a patent to be issued to his legal representatives for this lot. Could a patent issued under such circumstances, vest any title in the patentee? We unhesitatingly answer in the negative. The Secretary clearly exceeded his authority, in directing a patent to issue to the legal representatives of Wilette. The lot was set apart and appropriated to other persons. It belonged either to Bernard or Fontaine severally, or to both of them conjointly. And but to one or both of them, could the patent properly issue. The patent in question is a mere -nullity. It has no more force than so much waste paper. It is very true, that a patent is evidence of title in the patentee to the thing granted, until the contrary appears. It is presumed to have been regularly and rightfully issued. But when it appears on the face of the patent, or from any legitimate evidence, that it was issued in a case not authorized by law, it is utterly inoperative and void, and may be impeached collaterally in an action of ejectment. This doctrine, so manifestly just and reasonable, is fully sustained by the decisions of the highest courts in the country. In the case of Stoddard v. Chambers, 2 Howard, 284, the land in controversy was reserved from sale at the date of the entry, survey and patent. Of the rights acquired under the patent, the Court said: “ On the above facts, the important question arises, whether the defendant’s title is not void. That this is a question as well examinable at law as in chancery, will not be controverted. That the elder legal title must prevail in the action of ejectment, is undoubted. But the inquiry here is, whether the defendant has any title, as against the plaintiffs. And there seems to be no difficulty in answering the question, that he has not. His location was made on lands not liable to be thus appropriated, but expressly reserved; and this was the case when Ms patent was issued. Had the entry been made, or the patent issued, after the 26th of May, 1829, when the reservation ceased, and before it was revived by the act of 1832, the title of the defendant could not be contested. But at no other interval of time, from the location of Bell until its confirmation in 1836, was the land claimed by Mm liable to be appropriated in satisfaction of a New Madrid certificate. No title can be held valid which has been acquired against law; and such is the character of the defendant’s title, so far as it trenches on the plaintiff’s. It has been argued, that the first patent appropriates the land, and extinguishes all prior claims of inferior dignity. But this view is not sustainable. The issuing of a patent is a ministerial act, which must be performed according to law. A patent is utterly void and inoperative, which is issued for land that had been previously patented to another individual. The fee having been vested in the patentee by the first patent, the second could convey no right. It is true, a patent possesses the highest verity. It cannot be contradicted or explained by parol; but if it has been fraudulently obtained or issued against law, it is void. It would be a most dangerous principle to hold, that a patent should carry the legal title, though obtained fraudulently or against law. Fraud vitiates all transactions. It makes void a judgment, which is a much more solemn act than the issuing of a patent. The patent of' the defendant, having been for land reserved from such appropriation, is void.” The cases of Jackson v. Lawton, 10 Johnson, 23; Patterson v. Winn, 11 Wheaton, 380; and Polk’s Lessee v. Wendal, 9 Cranch, 87; and 5 Wheaton, 293, assert the same doctrine. We are clearly of the opinion, that the patent vested no title in the legal representatives of Wilette, to the premises in controversy in this case. The Court, therefore, erred in admitting it in evidence. The judgment is reversed, and the cause remanded. Judgment reversed,.