Makshall,
 
 Ch. J.
 

 after stating cue case, delivered the opinion of the Court as follows:
 

 The first exception is to the-admission of the grarii set up by the Defendants in bar of the Plaintiff’s'title. This objection alleges the grant to be absolutely void for three causes.
 

 The first is,
 

 That no grant could lawfully issue for the quantity of land expressed in this patent.
 

 If this objection be well.founded, it will be conclusive. Its correctness depends on the laws of the state of North Carolina.
 

 The act of 1777, ch. 1, opens the . land office of the state, and directs an entry-taker to be appointed in each county, to receive entries made, by the citizens, of its vacant lands. The third section pf this act contains a proviso that no person shall-be entitled to claim
 
 st
 
 greater quartity of land than 640 acres, where the survey shall he bounded by vacant land, nor more than
 
 *95
 
 1,000 acres between lines of land already surveyed for other persons.
 

 The fnurtfy section fixes the price of land thus to he entered at 50 shillings per hundred acres; after which follows á proviso that if any person shall claim than 840 acres for himself, and 100 acres for his wife and each of his children, he shall pay for every hundred acres exceeding that quantity, five pounds, and so' in proportion. But this permission to take up more than the specified quantity of lands at five pounds for every hundred acres, dots not extend to Washington county.
 

 In June, 1781, ch. 7, the land office was closed, and further entries for lands, prohibited. -
 

 Jn April, 1783, ch. 2, the land office was again opened, and the price of lands fixed at ten pounds for each hundred acres. The ninth section of this act authorizes any citizen to enter, with the entry-taker to be appointed by the assembly, « a claim for any lands, provided « such claim does not exceed 5,000 acres.”
 

 This act limits the amount for which an entry might he made. But. the same person is not, in this act, forbidden to make different
 
 entries';
 
 and entries were transferrable. No prohibition appears in the act, "which should prevent the assignee .of several entries, or (he person who has made several entries, from uniting them in one survey and patent. The Court does not perceive, in reason or in the directions of the law respecting surveys, any thing which should Restrain a surveyor from including several entries in the same survey. The form of sum-ys, which is prescribed by law, if that, rule should be considered as applicable to surveys made on several entries united, may be observed, and, in this case, is observed, notwithstanding the union of different entries.
 

 In April, 1784, ch; 19, the legislature again took" lip this subject, and, after reciting tfiat it bad been found impracticable- to survey most of the entries of lands made adjoining the large swamps in the eastern parts of the state agreeable to the manner directed by the acts then in force, without putting the makers thereof
 
 *96
 
 to great and unnecessary expenses, empowered surveyors in the eastern parts of the state to survey for any person or persons, his or their entries of lands in or adjoining any of the great swamps in one entire survey.
 

 third section enacts, “ that where two or more ei persons shall have entered or may hereafter enter
 
 6‘
 
 lands jointly, or where two or more persons agree to £* have their entries surveyed jointly in one or more
 
 “
 
 surveys, the surveyor is empowered and required to f£survey the same accordingly in one entire survey; “ and the persons so agreeing to have their entries sur* íí veyed, or entering lands, jointly, shall hold the same
 
 “
 
 as tenants in common, and not as joint-tenants.”
 

 The fourth section secures the same fees to the surveyor and secretary as they would have been entitled to claim, had the entries been surveyed and granted separately.
 

 As all laws on the same subject are to be taken together, it is argued that this act shows the.-sense of the legislature respecting the mode of surveying entries, and must be taken into view in expounding the various statutes on that subject. It evinces unequivocally the legislative opinion that, as the law stood previous to its passage, a joint-survey of two entries belonging to the same person or to different persons, could not be made. The right to join different entries >in the same survey, then, must depend on this act.
 

 The first and second sections of this act relate exclusively to entries made in or adjoining to the great swamps in the eastern parts of the state.
 

 The third section is applicable to the whole country, but provides only for the case of entries made by two or more persons.. It is, therefore, contended that the Court cannot extend the provision to the case of distinct entries belonging to the sanie person..
 

 For. this distinction it is impossible to conceive a rea-, son/ No motive can lie imagined for all- wing two or more persons to imite their entries in one survey, which does not apply, with at least as much force for allowing
 
 *97
 
 a single person to unite his entries adjoining each other in one survey. It appears to the Court that the case comes completely within the spirit, and is not opposed by the letter of the law. The case provided for is, « where two or more persons agree to have their entries
 
 “
 
 surveyed jointly,” &c. Now this agreement does not prevent the-subsequent assignment of the entries to one of the parties; and the assignment is itself the agreement of the assignor that the assignee may survey the
 
 the
 
 entries jointly or separately, at his election. The Court is of opinion that, under a sound construction of this law, entries which might be joined in one survey, if remaining the property of two or more persons, may be so joined, though they become the property of a single person.
 

 The second objection to the admission of the grant is, that the amount of the consideration .originally expressed on its face appears to have been torn out.
 

 The grant stands thus:
 
 “
 
 for and in consideration. « of --pounds,” &C.
 

 The Court is unanimously and clearly of Opinion that there is nothing iri this objection. It rs not suggested, nor is there any reason to believe, that the words were obliterated for fraudulent purposes, or for the purpose of avoiding the grant. They may have been taken out by some accident; and there is no difficulty in supplying the lost words. The consideration paid was ten pounds for each hundred acres; and theye can be nO doubt that the word “ ten” is the word which is obliterated. Had the whole grant been, lost, a copy might have been given in evidence; and it would be strange if the oi'iginal should be excluded because a word winch could not be. mistaken, and which, indeed, is not essential to the validity .of the grant, has become illegible.
 

 The third exception is, that the grant, on its face* appears fraudulent, because it has
 
 issued
 
 for 25,060 acres of land, although the lines which circumscribe it, and which are recited in it, comprehend upwards of 50,000 acres.
 

 Without inquiring into the effect of a grant convey
 
 *98
 
 ing 50,00ft acres of land under a.saie of 25,000 acres, it will bé sufficient to observe that, in this case,, the sur.plus land is comprehended in prior entries, and is eon-. sequently not conveyed by this grant. This.exception, therefore, is inapplicable to the case.
 

 It is the opinion of this Court that there was no er-' ror in permitting the grant under which the Defendant claimed title, to go to the jury.
 

 M he remaining exceptions were taken after the grant was before the jury, and are for causes not apparent on its face. They present one general question of great importance to land holders in .the state of Tennessee, If is-this : Is it, in; any, and, if in any, in what, bases, allowable, in an ejectment, to impeach a grant from the State, for causes anterior to its being issued 2. .
 

 In. cases depending on the statutes of .a state, and more especially in those respecting tith-s to land, this Court adopts tire construction bf the state where that construction is settled, and ean be ascertained.. But it is not understood.that the Courts of Tennessee have de-cided any other point, bearing on the subject than this, that under their statutes declaring an elder grant founded on á younger entry to be. void, the priority of entries is examinable at law; and that a junior patent founded on'a prior entry Shall prevail in an ejectment against; a senior patent founded on a jhnior entry.. The question . whether there are other cases in which a party may, at . law, go. beyond'the gránt for the'purpose ,of avoiding itj remains undecided.
 

 - The laws for the sale of public lands provide many guards to secure the regularity of grants* to protect the incipient righta-of individuals, and. also to protect tire state from imposition.- Officers are appointed to superintend tire, business; and rules are framed prescribing their duty.. These rules are, in general, directory,* and when all the .proceedings aré completed by a patent issued by the authority of the state, a compliance with these, rules is pre-supposed. That every prerequisite has been performed, is an inference properly deductible, and which every man has a right to draw from the existence of the. grant itself, it would,, therefore* be ex-
 
 *99
 
 tmnely unreasonable to avoid a grant in any Court for irregularities in the conduct of those who are'appointed by the government to supervise .the progressive course of a title from its commencement to its consummation in a patent. But there are some things so essential to the validity of the contract, that the great ptincipl; s justice and of law would be violated,, did there not exist some tribunal to which an injured party might appeal, and in which the means by which an elder title was acquired, might be examined. In general, a Court Of equity, appears to be a tribunal belter adapted to this object than a Court of law. On an ejectment, the pleadings give no notice of those latent defects of which the party means to avail himself; and, should he be allowed to use them, the holder of the elder grant might often be surprized. But in equity, the specific points must. be brought into
 
 view;
 
 the' various circumstances connected with those points are considered; and al) the testimony respecting them may be laid before the Court., The defects in the title are the particular objects of- investigation ; and the decision of a Court in the last re-' sort upon them is decisive. The Court may,,’on a view of the v;hole case, annex equitable conditions to its decree, or order what may be reasonable, without absolutely avoiding a whole grant. In the general, then, a Court of equity is the more eligible tribunal for these questions; and they ought to be excluded from á Court of law. But there are cases in-which a grant is abso- . lutely void; as where the state has ho title to the thing
 
 granted;
 
 or where the officer bad no authority to issue the grant. In. such cases, the validity of the grant is necessarily examinable at law.
 

 Having premised these general principles, the Court will proceed to consider the exceptions to the opinion of the Circuit Court in this case, and the testimony rejected by that opinion.
 

 The case does not present distinct exceptions, to be considered separately, but a single exception to a single opinion, rejecting the whole testimony offered by the Plaintiff. The Plaintiff offered to prove that no entries were ever made authorizing the issuing of the warrants on which the grant to Sevier was founded, and that the warrants themselves were forgeries. He also offered
 
 *100
 
 to prove that, at the time of the cession to cóngress of the territory in which these lands lie, the warrants did not exist, nor were there any locations in the office, from which they purport to have issued, to justify their is-stung.
 

 In the state of North Carolina itself, the want of an entry would seem to he a defect sufficient to render a grant null.
 

 The act of 1777, which opens the land office and,directs the appointment of an officer in each county, denominated an entry-taker, to receive entries .of all vacant lands in his county, directs the entry taker, if the lands shall not be claimed by some other person within three months, to deliver to the party a copy of the entry with its proper number, and an order to the county súrvéj or to survey the same. This order is called a warrant.1
 

 The ninth section of the act then declares, “ that “ every right, &c. by any person pr persons set up or “ pretended to any of the before mentioned lands, which “ shall not be obtained in manner by this act directed, “ or by purchase'.or inheritance from some person or “persons becoming proprietors by virtué thereof, or “which shall be obtained in fraud, evasion or elusion “of the provisions and restrictions thereof, shall be “ deemed and are hereby declared utterly void.”
 

 The act of 1783, which agains opens the land office, appoints an entry-taker for this western district, and prescribes rules for making entries in his office, and for granting warrants similar to those which had been framed for the government of the entry-takers, of the respective counties.
 

 In the year 1789 North Carolina ceded to congress the territory in. which the lands lie for which Sevier’s grant was made, reserving, however, all existing rights under the state, which were to be perfected according to the laws of North Carolina. This cession was accepted by congress.
 

 Sevier’s survey is dated on the 26thtlay of May, 1795.
 

 
 *101
 
 The lands for which the warrants were granted, by virtue of which the survey was made, lie within that district of country for which the land office was opened by the act of 1777. Had the survey been made on the land originally claimed by these warrants, it must have been a case directly within the ninth section of the act} and the right is declared by that section to be utterly void. But the survey was made on different lands by virtue of an act which empowers the surveyor so to do in all cases of entries on lands pre\ rnsly appropriated. This clause in the law, however, does not authorize a survey where no entry has been made; and such survey would also come completely within the provision of the ninth section. In such case, there is no power in the agents of the state to make the grant: and a grant so obtained is declared to be void.
 

 This subject is placed in a very strong point of view by considering it in connexion with the cession made to the United States, After that cession, the state of North Carolina had no power to sell an acre of land within the ceded territory. No right could be acquired, under the laws of that state. But the right was reserved to perfect incipient titles. The fact that this title accrued before the cession does not appear on the face of the grant. It is, of course, open to examination. The survey was not made until May, 1795, many years posterior to the cession. It purports, however, to have been made by virtue of certáin warrants founded on entries which may have been made before the cession. But if these warrants had no existence at the time of the cession, if there were no entries to justify them, what right could this grantee have had at the time of the cession? The Court can perceive none,- and if none existed, the grant is void for want of power in the state of North Carolina to. make it.
 

 If, as the Plaintiff offered to prove ■ the entries were never made, and the warrants were forgeries, then no right accrued under the act of 1777 } no purchase tif the land was made from the state} and, independent of the act of cession to the United States, the grant is void by the express words of the law.
 

 If entries were made in the county of Washington,
 
 *102
 
 but no commencement of. right had taken place in the ceded territory previous to the cession, so as to bring the party within the reservation, contained in the act of cession, then the grant must be void, there being no authority in the-grantor to make it. in rejecting testimoto thesgpoints, the Circuit Court erred; and their judgment must.be reversed, and the cause remanded for a new trial.