Mr. Chief Justice Sharkey
delivered the opinion, of the court.
This is an appeal from the superior court of chancery, which presents two questions: First, will a junior patent predicated on a senior preemption right, overreach a senior patent to the assignees of Jefferson College, which issued in accordance with the provisions of the act of congress, in favor of Jefferson College ? And second, is a junior patent, predicated on a reservation to a Choctaw Indian, under the treaty of Dancing Rabbit Creek, a superior title to a patent to the assignees of Jefferson College ?
It appears that Keirn claimed to enter four lots of land in Section No. 12, of Township No. 16, of Range 1, West, under the act of congress of 1834, which extended the act of 1830, with some additional provisions. The first act gave a right of preemption to every occupant of public land, who was in possession of the land at the date of the act, and who had cultivated part of it in 1829, on his making proper proof before the register and receiver of the office where the land was subject to entry. This act was only to continue in force a limited time. The act of 1834 revived the act of 1830, and extended the right of preemption to persons then in possession, who had cultivated a part of the^ land in 1833. This last act was to continue in force two years. The right granted under these acts extended only to a quarter section of land. These acts only granted the right on certain conditions, or rather to a class of persons who had performed certain requisites, the proof of which was re *788 quired lo be made in a particular way. It is evident that no one could claim the benefit of these acts, unless he could bring himself fully within their provisions, not only with regard to the facts to be proven, but also in the manner of making the proof. On the 20th of September, 1834, Keirn presented to the register and receiver of the land office at Mount Salus, his affidavit, stating therein that he had cultivated part of the land in 1833, and had possession of it on the 19th of June, 1834, the date of the act. He also proved the same facts by the separate affidavits of two witnesses, B. T. Edrington and Joseph L. Chappell, and presented the certificate of Henry G. Johnston, stating that he knew the witnesses, and believed them to be men of veracity and entitled to credit, whereupon the register and receiver signed a joint certificate, acknowledging themselves to be satisfied with the witnesses, and on the 8th of November, 1834, Keirn received from the register a certificate of entry. On the 10th of February, 1841, a patent issued.
On the 16th of August, 1834, Joseph McAfee, as assignee of Jefferson College, presented his deed of transfer to the register of the land office at Mount Salus, for two sections of land, and made his location so as to include the land already mentioned as claimed by Keirn, and received the register’s certificate, which is declared by the act of congress to be equivalent to a patent. McAfee therefore had the older patent, and unless Keirn can make his junior patent retake back to his prior right of preemption, he must fail.
These preemption acts do not confine the right to any particular lands. The whole of the public domain was subject to this right, with the exceptions mentioned in the act. We cannot question the right of congress to confer this privilege on the actual settler, and the fact that it was a gratuity, makes no difference ; the right is as valid as though it had been founded on a valuable consideration. It amounted to something more than a mere right to enter the land at government price ; that right every citizen had, and if the act of congress did no more, it was useless. But it did more; it gave a preference to the actual settler, the effect of which was to exclude the right of all others *789 so long as this preference could be claimed. Hence it was a requisition of the proper department, or a provision of law, that no entry should be allowed until the applicant had filed an affidavit that the land was not occupied or cultivated. This right of preemption then constituted an equity in favor of the occupant. Not an uncertain indefinite equity; it was located and identified; it attached to the particular quarter section occupied and cultivated by the claimant. The act of congress was an appropriation of all land so occupied. This equity might be lost, of course., by a failure to make the entry within the prescribed time, but during the whole of that time the occupant had a-right to make the entry at the minimum price, to the exclusion of all other entries. Keirn has shown a complete equity, by a literal compliance with every provision of the law, and having subsequently made the entry and received a patent, his title must be regarded as superior in a court of equity, to any title acquired by mere entry, and a patent on it, although it be older than the patent under the preemption right. Equity looks to the incipient right, and couples to it the perfect title. The patent relates to the inception of title, and in a court of equity the person who has first appropriated the land, has the best title. Taylor v. Brown, 5 Cranch, 234; Polk's Lessee v. Wendell, 9 Cranch, 87; Fenley v. Williams, Ib. 164; McArthur v. Browder, 4 Wheaton, 488; Isaacs v. Steel, 3 Scam. R. 97; Bruner v. Manlove, Ib. 339. The bill charges McAfee with notice of complainant’s preemption-right at the time he made his location, and the answer admits that respondent knew that Keirn was in possession of the land. He made his location then with a full knowledge of the complainant’s right.
But it has been insisted that the appellants have a title superior to that of a common purchaser of public land, inasmuch as they derive title through Jefferson College, which was privileged to locate the quantity of land granted to it, on any vacant and unappropriated land, either before or after it had been offered for sale. The preemption laws extended precisely the same right; they did not confine the claimant to land that had been offered for sale, or even to land that .had been surveyed. *790 The right of Jefferson college was to locate unappropriate land; the preemption right is based upon actual location, and in consequence of the location, the land was appropriated. But if there could be any doubt on this subject, we might regard the question as virtually settled, by the decision of the commissioner of the general land office, which is against the validity of McAfee’s entry, and in favor of Keirn. It seems also that the .secretary of the treasury decided that McAfee’s claim must yield to the preemption claimant.
The distinction between this case and that of Fulton et al. v. Doe ex dem. McAfee, 5 Howard, 751, is quite clear. That was an action at law, in which the junior patentee wished to go behind his patent, and establish his right in virtue of the preemption laws; and he even failed in showing that he was within the provision of those laws. He had not made the requisite proof to entitle him to a preemption right, nor had he made it in the manner prescribed.
With regard to that portion of the land claimed under the reservation, in the Ghoctaw treaty, there is no room for even a ■doubt. It seems that the land was reserved from sale for Collins the Indian, by G. W. Martin the locating agent. The reservations under that treaty have been held to be complete titles, subject to be defeated by the non-performance of conditions subsequent. Collins’s title then accrued in 1830. He transferred it •to Keirn by the consent of the president of the United States, and Keirn has received a patent. The reservation under the treaty, properly transferred to Keirn, even without the patent, would have been sufficient as against McAfee’s title. Altogether, we think the decree of the chancellor was right, and it is accordingly affirmed.