Bartley, J.
The plaintiff in error claims an absolute and perpetual exemption from taxation, upon the alleged ground that the law incorporating the company is a contract between the state and the corporation, containing a stipulation, in express terms, that the ! corporation should be forever exempt from taxation. This was the defense relied upon as a bar to the action in the court below; and upon *the ground that it was overruled by the court, the [580 plaintiff in error seeks to reverse the judgment. The question presented by the ease is twofold in its character, involving the ques *581 tion whether the act incorporating the company is exempt from the legislative power of amendment, as well as the legislative control over the right of taxation. Inasmuch as the charter provides, in express terms, for a perpetual exemption from taxation, the corporation can be made liable to taxation only by legislation having the effect to amend the law creating it, by repealing the exemption.
The legislative or law-making power is the vital function which animates, directs, and controls the whole operation of civil authority. When it is conferred by the constitution in general terms, it extends to every legitimate purpose of legislation pertaining to civil government, subject to such limitations only as are expressly provided in the constitution. The power of taxation is included in the legislative power, and can be exercised only through its instrumentality, and by the authority of law. It is a means employed by the legislative power, which is as important to the continued existence of civil government as the circulation of the blood is to the human system. This attribute of sovereignty can not, under the constitution of this state, in any manner or to any extent whatever, be limited, abridged, or relinquished by contract, or sale to any person or association of persons.
The plaintiff in error derived the usual powers of a corporation from this law of its creation, including the important authority to take lands, materials, etc., the subjects of private property, belonging to other persons, and appropriate the .'same to the purposes of its plank-road; and also the very liberal authority to charge any rate' of toll for the use of its road which the directors might, in their discretion, prescribe. If, upon these terms and in the exercise of these powers, the corporation had not sufficient inducement to construct its road, it was not competent for the legislature, by way of contract, and in consideration that, the company would exercise the powers given it, and construct its road, to surrender the con-581] stitutional *power of taxation over it. The constitution of the state does not clothe the general assembly with the authority to surrender or part with any portion whatever of the taxing power, by contract or sale. That the legislature of this state has not the constitutional authority, in conferring special privileges on corporations, to abridge, or in any manner whatever surrender any portion of the right of taxation, has been settled by solemn adjudication, and is not now an open question in this state. Debolt v. *582 The Ohio Life Insurance & Trust Company, 1 Ohio St. 564; Toledo Bank v. The City of Toledo, Ib. 623.
This is decisive of this case; and upon this ground the judgment of the court of common pleas must be affirmed. In expressing the views of a majority of the court, however, I may go further.
By the first section of the second article of the constitution, the legislative power of the state is, in general terms, vested in the general assembly. This most important of all the powers of government, being that in which the supremacy of the government itself consists, must remain in full force, and undiminished. And. the power of enacting laws necessarily comprehending full power to amend and repeal laws, if complete control over all existing laws did not exist, the legislative power would be imperfect, and incompetent to the complete performance of its high functions. The legislature can not, at one session, by the enactment of a law, in any manner, or to any extent whatsoever, limit or abridge the legislative power vested in this body, at any subsequent session. There is no provision of the constitution which enables the general assembly, in the enactment of a law, to provide, by contract or otherwise, against its amendment or repeal. If this could be done, the sovereign power of legislation itself, could be abridged by contract; for the legislative power must be as ample and complete in its capacity to alter and repeal existing laws, as it is in the power of the enactment of new laws. If a law could, therefore, in its nature, be a contract, it would be subject to the unavoidable ^incidental [582 condition of amendment and repeal by the legislative power of the state. But a law and a contract are two things essentially distinct in their nature. A law is a rule of action prescribed by the supreme power in a state, which all persons within the sphere of its operation are compelled to obey. 1 Blackstone’s Com. 40. A law is an enactment proceeding from the supreme power in the government, in consideration of the public interests. The enactment of a law can not be procured by contract. There is no provision in the constitution of Ohio, authorizing any person, or set of persons, to purchase the enactment of a law by contract. The exercise of the legislative power can not be made the subject of barter or .sale. This highest function of civil authority acts solely and alone from the overruling considerations of the public interests'. If the enactment of laws could be procured by contract or purchase, the public interests would be sacrificed to the corrupting considerations *583 of special and private interests. A law, therefore, from its inherent nature, can not be a contract; on the contrary, it is a rule of action prescribed by the supreme civil power, solely and alone, from the paramount and controlling consideration of the public interests. A contract is essentially different and distinct. It is an agreement between two competent parties, upon a mutual and legal consideration, and in relation to a matter which is the legitimate subject of bargain or sale.
Although the law can not in its nature constitute a contract, yet it may authorize the making of a contract. Contracts to which the state is a party, are usually made under the authority of some existing law, and in conformity to its directions. But there is a plain and wide distinction between the law itself, and the contract entered into under its authority. Where a contract is entered into, pursuant to the authority of a law for the transfer of property, or the performance of services, a vested right may be created, separate and distinct from the law itself, so that, even if the law be sub-588] sequently amended or repealed, the obligations of *the contract and vested rights created, remain unimpaired. The repeal or amendment would be prospective, and not retroactive in its operation, and, therefore, not operative against the authority by which the contract was made. This distinction between a law and contract made under its authority, is one which has long been sanctioned by the Supreme Court of the United States, and recently recognized by the Supreme Court of Ohio. Fletcher v. Peck, 9 Cranch, 87; The Charles River Bridge v. The Warren Bridge, 11 Peters, 530; 1 Ohio St. 640; The Bank of Toledo v. Bond et al.
The doctrine, however, that the charter of a private corporation is a contract, rests upon the ground that the law itself, under which the company organizes and acts as a corporation, is a contract and thereby exempted from the legislative power of amendment and repeal; and this, by implication, and without express provision to that effect! This absurd doctrine has been promulgated as law ■in this country for a number of years, to Sustain certain views'of public policy; but the whole doctrine is founded on. the authority of the decision of the Supreme Court of the United States, in the case of Dartmouth College v. Woodward, 4 Wheat. 518, which, upon close examination, does not sustain it. The gross absurdity of this doctrine, and the authority which gave rise to it, is fully examined and exposed in the opinion of this court, in the cases of *584 The Toledo Bank v. The City of Toledo, 1 Ohio St. 640; Knoup v. The Piqua Bank, Ibid. 604, and Mechanics & Traders’ Bank v. Debolt, Ibid. 592.
In the case of the West River Bridge Company v. Dix et al., 6 How. 530, the Supreme Court of the United States held, that the right of eminent domain, one of the sovereign attributes of government, and' essential to its preservation and the proper performance of its functions, in paramount to the rights of private property; and that, not 'only the property, but the franchise of a corporation, was held subject to its exercise. The right of eminent domain is certainly not any more important and essential to the existence of government, and =Hhe proper exercise of its [584 powers, than the right of taxation, and the right of legislative control over existing laws by amendment and repeal. Those high functions of sovereignty are inherent in every distinct political community, which are essential to guard its own existence, and to protect and promote the public interests. The exercise of these highest acts of sovereignty, relate not only to the external relations of government, but extend to the interior polity and relations of social life, and must be regulated with reference to the public interests and advantage of the whole community. And all private rights must be held as ■ subordinate, subject to the control of these indispensable functions of civil authority. This does not affect the inviolability of private property. The obligations of contracts, and indeed all rights of private property, rest upon those incidental or implied conditions, which are superinduced by the pre-existing and higher authority of the laws of nature, of nations, and of the community in which they exist. The right of taxation, and the right of legislative control over existing laws by amendment and repeal, as well as the right of eminent domain, are high trusts of. delegated sovereign authority, which the mere agents authorized to administer them have no power to abridge or surrender to any extent, or in any manner whatsoever. That the legislative power may sometimes select its objects for taxation, and within its con- ■ stitutional powers, provide a total or partial exemption from taxation for property of a particular kind, or the property of particular persons, does not affect the question, provided such laws remain subject to amendment and repeal. The taxing power is not abridged or surrendered, so long as it is subject to legislative control. But if the legislature can pass a law, and provide by contract against *585, 586 .its amendment or repeal at any subsequent session, it can surrender .or relinquish a portion of the legislative power. And if the legislature can, by the enactment of a law, provide perpetual and irrepealable exemptions from taxation, it can virtually relinquish the 585] taxing power for the benefit of those in whose favor *the exemptions are provided- If the taxing power can be thus irretrievably relinquished for the benefit of corporations, it can be done for the benefit of natural persons ; and if it can be done for ■the few, it can be done for the many. If the legislature can enact laws for the benefit of corporations, and by contract surrender the legislative control over them, it can do the same thing for the benefit of natural persons. And if this can be done for a few favored persons, it can be done for the many. Thus the sovereign power of legislation, and of taxation, could-be relinquished and impaired, so as to destroy their efficiency to sustain the government, without the power of subsequent legislation to remove the difficulty by ■amending or repealing the laws. It was never intended by the constitution that these high trusts of civil power should be thus crippled and stripped of their efficiency and usefulness. It never was intended that the legislature should be clothed with the authority to surrender the powers, or any portion of the powers, which are essential to the preservation of the government itself. One of ■the great objects of written constitution is to provide against legislative discretion, which might lead to abuses, and ultimately to the destruction of the government itself. The legislative power of the state, therefore, which is, by the constitution, vested in the general assembly, must continue in full force and virtue at each succeeding session of that body, and remain wholly unimpaired by contract, or other provision, for its surrender or limitation, made at any preceding session of that body."
The ninth section of the charter of this corporation, therefore, providing for the exemption from taxation, was operative to protect the company from taxation under the authority of any statute existing at the time the act of incorporation was enacted, and until the legislature should otherwise provide. And although this exemption in its terms would seem to be perpetual, it is to be construed with reference to the constitutional powers of the body which enacted it, and, therefore, as perpetual only as against tho 586] laws existing at *the time of its passage; but as wholly inoperative as against any subsequent laws which might be enacted *586 imposing a tax upon this corporation. This is the construction, which, in the exercise of the judicial power of the state, a majority of the court places upon this state law.

The judgment of the court of common pleas affirmed.

Judges Ranney and Thurman confined their expression of opinion to the propositions stated in the syllabus, not deeming it necessary to pronounce upon the other matters considered in the opinion of Judge Bartley.