W. J. STOCKARD *v.* W. T. MCGARY *et al.*

(*Nashville.*  December Term, 1907.)

1.  **LAND LAW.**  Grant is conclusive of the validity and existence of the entry, when.

The State's grant for its unappropriated land, issued by its proper officers, under the great seal of the State, in pursuance of law authorizing it, reciting that it was issued in consideration of an entry made in the entry taker's office in one county while the land entered and granted was situated in another county, but properly identified, is conclusively valid against a subsequent grantee, notwithstanding such entry was void, because received by a person not authorized to receive it. An entry is not indispensably necessary to the validity of a grant, and in a controversy between the first grantee and the second, a sound public policy will not permit the validity or legal existence of the entry as the foundation of the first grant to be made the subject of inquiry in an ejectment suit by the claimant under the first grant against the second grantee.

Cases cited and approved: Craig v. Vance, 1 Ov., 182; Smith v. Winton, 1 Ov., 230; Smith v. Buchannon, 2 Ov., 305; Overton v. Campbell, 5 Hay., 165; Curle v. Barrel, 2 Sneed, 63; Disney v. Coal Creek, etc., Co., 11 Lea, 613; Berry v. Wagner, 13 Lea, 591; Sampson v. Chester (Tenn.), 91 S. W., 43.

Cases distinguished and approved: Polk v. Wendal, 9 Cranch, 13 U. S., 87; Polk v. Wendell, 5 Wheat., 18 U. S., 293.

Cases cited and disapproved: Crutchfield v. Hammock, 4 Hum., 203; Woodfolk v. Nall, 2 Sneed, 674.

2.  **SAME.**  Grant is not invalidated by reciting the land to be in the wrong county, when.

The State's grant reciting that the land lies in one county while in fact it lies in another, but thoroughly identifies the land

Stockard v. McGary.

granted, is not thereby invalidated, but is within the saving of the statute contained in section 3766 of Shannon's Code. (*Post*, *p*. 203.)

Code cited and construed: Sec. 3766 (S.); sec. 2903 (M. & V.); sec. 2086c (T. & S.).

Acts cited and construed: Acts 1859-60, ch. 91, sec. 3.

---

## FROM LEWIS.

---

Appeal from the Chancery Court of Lewis County.— WALTER S. BEARDEN, Chancellor.

PITTS & MCCONNICO and KING & WILLIAMS, for complainant.

GEO. T. HUGHES and R. A. HAGGARD, for defendants.

---

MR. CHIEF JUSTICE BEARD delivered the opinion of the Court.

This is an ejectment bill. The complainant deraigns title to the land in question from a grant to himself and Thomas Voorhees, bearing date 7th day of January, 1887. This grant contains the recital that it was issued "in consideration of an entry made in the entry taker's office of Lewis county on the 29th of December, 1886," and it described the land as being in the Eighth civil district of Lewis county.

The defendant deraigns title through mesne conveyances from a grant to James E. and W. E. Voorhees, dated the 10th day of August, 1889, based on an entry made in the entry taker's office of Wayne county on the 5th day of March, 1888. While having a younger entry and grant, the defendant insists that complainant's action must fail, because the weight of the extrinsic testimony in the case is that at the time his entry was made and grant issued, and up to the year 1897, thereafter, the land covered by these grants lay within the limits of Wayne county, and therefore that complainant's entry was void, and this being so, the grant based thereon was equally void.

From the year 1844, when the county of Lewis was established by legislative act, up to the year 1897, the record shows that there was much confusion in the minds both of the officers of Lewis county and of the citizens of both that county and of Wayne as to the exact location of that part of the line separating these two counties which ran in the immediate neighborhood of the property in controversy. It is evident that many persons living in the immediate community understood that this land and the land surrounding it were within the limits of Lewis county, while others believed that the boundary line between these two counties divided this tract with other tracts in that vicinity. That the entry taker who received the entry upon which the grant of complainant was issued believed that this tract lay across this line and in both these counties is evident,

not only from the entry itself, but also from the fact that, having noted the entry in his office in Lewis county, soon thereafter he mailed or sent it either to the entry taker or surveyor of Wayne county to be there entered. We are satisfied that this was done before the issuance of the grant to complainant and Voorhees, yet the record leaves it in great doubt, if in fact it does not make it certain, that the entry was never recorded in the entry taker's office of Wayne county.

While we cannot say with absolute certainty on this record that no part of this tract lay in Lewis county, yet we think we must concede that the weight of the testimony is that it was situated altogether within the limits of Wayne county, and therefore that the entry taker of Lewis county was without authority to receive and record the entry in his office. The question then presented is: Can the defendant in this action at law avail himself of this fact to avoid complainant's grant? In other words, in the face of a grant, issued by officers representing the State, conveying confessedly vacant and unappropriated land, authenticated by the great seal of the State, will the defendant, a junior grantee, be permitted to avoid the older grant upon the ground that the entry with regard to which it purports to be issued was made in the office of an entry taker not empowered to receive it?

The counsel for the defendant—the appellant in this case—maintains that these questions are conclusively answered in favor of his contention by the leading case

of *Polk* v. *Wendal et al.,* which was twice decided by the
supreme court of the United States; the opinion on
the first appeal being delivered by Chief Justice Mar-
shall and on the second by Mr. Justice Johnson,
and the first opinion reported in 9 Cranch, 87, 3 L.
Ed., 665, and the last in 5 Wheat., 293, 5 L. Ed., 92.
This case involved a controverted question of land law
arising upon certain statutes of the State of North
Carolina, and the two opinions delivered therein have
always been regarded as of great authority, especially
in the courts of Tennessee and North Carolina.     In
that case the plaintiff claimed under a grant for five
thousand acres issued by the State of North Carolina in
the year 1800 to William Polk.     The defendants claim-
ed under a grant for twenty-five thousand acres issued
by the same State in 1795 to John Sevier.     No question
was made upon the plaintiff's grant, other than it was
younger than that from which the defendants deraigned
their title.     Upon the trial of the case in the United
States circuit court for the district of Tennessee, the
offer of the defendants to read the Sevier grant as evi-
dence of their title was resisted upon a   number   of
grounds.     Over the objection of the plaintiff the grant
went to the jury, and, the trial having resulted in a
verdict and judgment in favor of the defendant, the
case was carried by writ of error to the supreme court
of the United States, and there was first decided in
1815; the opinion at that time, as has been stated, being
delivered by Chief Justice Marshall and reported in 9

Cranch, 87, 3 L. Ed., 665.    After stating at very con-
siderable length the various statutes of North Carolina
providing for the opening of the land office in the State
and directing the appointment of entry takers, the court
proceeded to dispose of certain grounds of exceptions
which it is unnecessary here to set out, and, holding that
there was no error in permitting the Sevier grant to
go to the jury, then said:    "The remaining exceptions
were taken after the grant was before the jury, and are
for causes not apparent on its face.    They present one
general question of great importance to the landholders
of the State of Tennessee.    It is this:  Is it in any, and,
if in any, in what, cases allowable in an ejectment to
impeach a grant for cause anterior to its being issued?"

Before coming to the consideration of these excep-
tions, and an answer to the question, this eminent
judge laid down certain general principles which it
was assumed would give aid in disposing of these excep-
tions and making answer to this question.    The court
said:    "The laws for the sale of public lands provide
many guards to secure the regularity of grants, to pro-
tect the incipient right of individuals, and also to pro-
tect the State from impostors.    Officers are appointed to
superintend the business, and rules are framed pre-
scribing their duty.    These rules are, in general, di-
rectory; and when all the proceedings are completed
by a patent issued by the authority of the State, the
compliance with these rules is presupposed.    That ev-
ery prerequisite has been performed is an inference

properly deducible, and which every man has a right to draw, from the existence of the grant itself. It would, therefore, be extremely unreasonable to avoid a grant in any court for irregularity in the conduct of those who are appointed by the government to supervise the progressive course from its commencement to its consummation. . . . But there are cases in which a grant is absolutely void, as where the State had no title to the thing granted, or where the officer had no authority to issue the grant. In such cases the validity of the grant is necessarily examinable at law."

There is no contention in the present case that the State was without title to the land in controversy when the grant was issued in 1887 to the complainant and Voorhees. So it is that their grant is not void by reason of the proposition stated in the first clause of the sentence last above set out. It is insisted, however, that it falls within the letter of that contained in the last clause; that is, that it is void because the entry taker of Lewis county had no authority to make an entry of lands lying in Wayne county, and that the defendant is entitled in this action to impeach the grant upon that ground.

We are satisfied that the scope of the proposition, relied on as authority for the defendant's contention, is much narrower than is here insisted upon. Its limitation, we think, is clearly seen by the exceptions of the plaintiff, which the court was then considering and preparing to dispose of. These exceptions, overruled

by the trial judge, are thus stated: "The plaintiff offered to prove that no entries were ever made authorizing the issuance of the warrants on which the grant to Sevier was founded, and that the warrants themselves were forgeries. He also offered to prove that at the time of the cession to congress of the territory in which these lands lie the warrants did not exist, nor were there any locations in the offices from which they purport to have issued to justify their issuance."

Considering these exceptions, and the action of the trial judge in overruling them, the court said that "the act of 1777 (Iredell's Laws N. C., 1804, p. 205, c. 1), which opens the land office and directs the appointment of an officer in each county, denominated an 'entry taker,' to receive entries of all vacant lands in his county, directs the entry taker, if the land should not be claimed by some other person within three months, to deliver to the party a copy of the entry, with its proper number, and an order to the county surveyor to survey the same. This order is called a 'warrant.' The ninth section of the act (Iredell's Laws N. C., 1804, p. 206) then declares 'that every right, etc., by any person or persons set up or pretended to any of the mentioned lands which shall not be obtained in the manner by this act directed, or by purchase or inheritance from some person or persons becoming proprietors, by virtue thereof, or which shall be obtained in fraud, evasion, or elusion of the provisions and instructions thereof, shall be deemed and are hereby declared utterly void.'" The

court then said further:    "In the year 1789 North Carolina ceded congress the territory in which the lands lie for which Sevier's grant was made, reserving, however, all existing rights under the State, which were to be perfected according to the laws of North Carolina. This cession was accepted by congress. . . . The land for which the warrants were granted, by virtue of which the surveys were made, lies within that district of country for which the land offices were opened by the act of 1777. . . . After that cession the State of North Carolina had no power to sell an acre of land within the ceded territory.    No right could be acquired under the laws of the State.    But the right was reserved to perfect incipient titles. The fact that this title accrued before the cession does not appear upon the face of the grant.    It is, of course, open to examination.    The survey was not made until May, 1795, many years posterior to the cession.    It purports, however, to have been made by virtue of certain warrants founded on entries which may have been made before the cession.    But if these warrants had no existence at the time of the cession, if there were no entries to justify them, then what right could this grantee have had at the time of the cession?    The court can perceive none, and, if none existed, the grant is void for want of power in the State of North Carolina to make it."

The testimony which was tendered in the trial court, and for its error in rejecting which the judgment of that court was reversed and the cause remanded, tend-

ed to prove that entries were never made, that the warrants purporting to issue upon such were forgeries, that no right accrued under the act of 1777, and that there existed no inchoate right at the time of the cession act. It was with regard to these peculiar conditions, which the testimony offered would tend to establish, that the general proposition in the sentence above quoted was announced. We think it necessarily followed, from the terms of the cession act, that a party claiming under a grant from the State of North Carolina of lands lying in the State of Tennessee, issued after that act went into operation, in whatever form his grant came into controversy, would be bound, if properly challenged, to show that it was within the reservation of that act, and that it was equally true that his grant might be impeached in an action of ejectment by showing that no inchoate right existed at the date of the cession act, either because no entry was made in accordance with the requirement of the act of 1777, or that warrants issued upon his grant were forgeries. This, however, is not the case at bar. The land in question was unappropriated. The title to it was in the State of Tennessee at the time of the issuance of the grant under which complainant claims. His grant came from the proper office, and was issued by the secretary of State and the governor, whose duty it was to see that all prerequisites had been complied with, and it is authenticated by the great seal of the State. Such a case,

we are satisfied, does not fall under the ban of the principle announced by Chief Justice Marshall.

When that case a second time went to the supreme court upon an error assigned upon the action of the trial court in rejecting testimony offered to impeach the grant, the limitation that was to be attached to the earlier decision is clearly indicated in the opinion delivered by Mr. Justice Johnson. In speaking of that decision the court said: "It will be observed that as to irregularities committed by the officers of government prior to the grant the court does not express a doubt, but that the government, and not the individual, must bear the consequences resulting from them. On the contrary, it declares that the existence of the grant is in itself sufficient ground from which every man may infer that every prerequisite has been performed. All, then, that it decides is that an entry was indispensable as the inception to the title of Sevier; that if an original grant had issued to him after the cession, or a title had been perfected where there was no incipient title before the cession, as in the case of a grant on a forged warrant and no entry, that it would be void." Again it is said: "This court disavows having ever decided more than that an entry, or other legal incipiency of title, was necessary to the validity of a grant issued by North Carolina for lands in Tennessee after the separation. They have never expressed an inclination to let in inquiries into the frauds, irregularities, or acts of negligence of the officers of government, prior to the

issuing of a grant, but, on the contrary, have expressed the opinion that the government must bear the consequences."

That this was the limit to which the case in 9 Cranch, 87, 3 L. Ed., 665, could be invoked as authority is again pointed out in *St. Louis Smelting, etc., Co.* v. *Kemp,* 104 U. S., 636, 26 L. Ed., 875.    Here it is said, in speaking of their decision:    "The court held that proof that no entry had been made in the office of the entry taker in the county where the lands patented were situate prior to the cession to the United States was admissible under the ninth section [of the act of 1777], for without such entry they would not be within the reservation mentioned in the act of cession.    In other words, proof was admissible to show that the State had not retained control over the property, but had conveyed it to the United States."

The case last cited was an action at law predicated upon a patent issued by the United States, which the defendant sought to impeach by testimony as to certain irregularities and defects antedating its issuance.    In speaking of such a muniment of title and the effort to impeach it in an action at law by extrinsic testimony, the court said:

"The patent of the United States is a conveyance by which the nation passes its title to portions of the public domain.    For the transfer of that title the law has made numerous provisions—designated the persons who may acquire it and the terms of its acquisition.

That the provisions may be properly carried out a land department, as part of the administrative and executive branch of the government, has been created to supervise all the various proceedings taken to obtain the title, from their commencement to their close. . . . The execution and record of the patent are the final acts of the officers of the government for the transfer of their title, and, as they can be legally performed only after certain steps have been taken, that instrument, duly signed, countersigned, and sealed, not merely operates to pass the title, but is in the nature of an official declaration by that branch of the government to which the alienation of the public lands under the law is intrusted that all the requirements preliminary to its issue have been complied with. The presumptions thus attended are not open to rebuttal in an action at law. It is this unassailable character which gives to it its chief—indeed, its only—value as a means of quieting its possessor in the enjoyment of the land it embraces. Of course, when we speak of the conclusive presumption attending a patent for lands, we assume that it was issued in a case where the department had jurisdiction to act and execute it; that is to say, in a case where the lands belonged to the United States, and provisions had been made by law for their sale."

After reviewing the many cases in that court bearing upon this question, the general doctrine declared to be settled is thus stated: "A patent in a court at law is conclusive as to all matters properly determined by

Stockard v. McGary.

the land department, when its action is within the scope
of its authority; that is, when it has jurisdiction under
the law to convey the land. In that court the patent
is unassailable for mere errors of judgment. Indeed,
the doctrine as to the irregularity and validity of its
acts, where it has jurisdiction, goes so far that, if in
any circumstances under existing law a patent would be
held valid, it will be presumed that such circumstances
existed. . . . On the other hand, a patent may be
collaterally impeached in any action, and its operation
as a conveyance defeated by showing that the depart-
ment had no jurisdiction to dispose of the lands; that
is, that the law did not provide for selling them, or
that they had been reserved from the sale, or dedicated
to special purposes, or had been previously transferred
to others. In establishing any of these particulars the
judgment of the department upon matters properly be-
fore it is not assailed, nor is the regularity of its pro-
ceedings called into question; but its authority to act
at all is denied, and shown never to have existed."

So it is, we think, clear from these interpretations of
the case in 9 Cranch, 87, 3 L. Ed., 665, that its author-
ity extends no further than to let in evidence in a col-
lateral proceeding to show that the State had no title
to the land at the issuance of its grant, or had made
no provision for its sale, or had reserved it from sale,
or had previously transferred it to another grantee,
or for some other like reason the grant was absolutely

120 Tenn—13

void.    That case had no occasion to deal with the con-
nection of an entry and grant, save as this was effected
by the reservation in the cession act of the right of
North Carolina to perfect titles that at the date of that
act were inchoate, and certainly it was never intended
to lay down the proposition, contended for at bar, that
a grant issued upon an entry made by inadvertence or
other mistake in the office of the wrong entry taker,
under the system prevailing in Tennessee at the present
time, was void, and that this could be shown in an action
of ejectment by a second grantee.    The fact that the
entry in this case was made in the office of the
entry taker of Lewis county, when the land lay in
Wayne county, was an error, it may be conceded, of
the enterer; but it was no less an error on the part of
the State's officer to permit this to be done.    At most
it was an irregularity, and we think, on the authority
of the cases cited, the State owning the land, and the
grant having been issued under the great seal of the
State, all inquiry as to this, especially by the second
grantee, is cut off.

The case of *Overton's Lessee* v. *Campbell & Lackey,*
5 Hayw., 165, 9 Am. Dec., 780, is one full of learning
on the subject of grants and of great authority.    In
that case separate opinions were delivered by Whyte,
Roane, and Haywood, JJ., all masters of the techni-
cal system of land laws which Tennessee inherited from
North Carolina.    The questions there presented were:
First, whether a grant issued by North Carolina, un-

der the power reserved in the cession act, made upon a military warrant to land outside of the territory set apart by that State, in section 7 of chapter 3 of the Acts of 1783 (Iredell's Laws N. C., 1804, p. 326), preferentially for the officers and private soldiers of the Continental line, was void; and, second, if so, could this be shown in an action of ejectment?    All these judges concurred in holding that the grant was not void, while there was a difference between them on the last question. Judge Whyte, in his opinion, after setting out the holding of the court in the case in 9 Cranch, 87, 3 L. Ed., 665, said:

"I shall now make an application of the doctrine in *Polk* v. *Wendal* to the case under consideration, and in doing this I will admit in effect, as the plaintiff's counsel contend, that the State had no right in one sense to issue the grant in question to the defendant; that is, that he had no directions to issue a grant on the defendant's claim for land in John Armstrong's ground.  .  .  .   North Carolina authorized her officer to issue grants upon military claims for the land comprised within the military bounds designated in the seventh section and third chapter of the Acts of 1783, and she authorized her officer to issue grants upon John Armstrong's claims for land within John Armstrong's bounds.    The officer, however, instead of pursuing his authority strictly, issued the defendant's grant, being a military claim, for land comprised within John Armstrong's bounds.    Now this was an irregularity in the

execution of his authority, or a nonpursuance of its directions; but the lands within both bounds . . . . were grantable by order of the State.    The officer had a right to issue a grant passing the State's title to both; the one to the one claimant, the other to the other. But the officer has granted a part of John Armstrong's bounds to a different claimant than the law contemplated.    The question is, does this make the grant absolutely void?    My opinion is that it does not. . . . But it is also said, on argument for the plaintiff, that on this case agreed no entry is stated, and we are not to presume one, when our decisions say a grant may be good without an entry.    Besides, it is said, 'you cannot presume in favor of illegal acts, but you may do so in favor of legal ones.' . . . This, in fewer words, is saying there was no entry, therefore the grant is illegal, and as the grant is illegal no entry can be presumed. The strength of this objection consists in setting the statement of the case in opposition to the grant and an inference deduced therefrom, to wit, that there is no entry . . . against the presumption of law raised by the evidence of a grant that there is one. . . . What is a State grant?    It is a public record (2 Blackstone, Com., 346; 3 Tucker's Blackstone, 261, note 10; *Jackson* v. *Lawton,* 10 Johns. [N. Y.], 26, 6 Am. Dec., 311) ; a record to evidence in the most solemn manner by the great seal of the State, for it cannot issue before it is recorded—this act of recording being one of the essentials constituting a grant, and that before it

issues.   .   .   .   A State grant or patent is a record of
the highest validity and verity, and is conclusive evi-
dence of its contents, to wit, that the State has passed
its title to the lands therein conveyed. · It must at the
same time be conclusive evidence that all the previous
requisites existed that were necessary to authorize and
render it a complete and legal act which were material
and traversible." Citing several authorities, Judge
Whyte continues : "These authorities prove, first, that
the grant is incontrovertible evidence of the entry; and,
secondly, that the inference deduced is inadmissible.
But if the statement [that is, the agreed statement of
the case] had even in express terms negatived the ac-
tual existence of an entry, and the parties had put it
down as a fact *totidem verbis* that there was no entry,
then I would say that though the parties by their ad-
missions may renounce the benefit of the law, yet they
cannot thereby change it, and that the complexion of
the case is not the least varied; that the evidence of
its nonexistence, being of an inferior nature to that
evidenced by the grant, could not prevail, and, being in-
compatible with the rules of law, the court would be
bound to disregard it. It is remarked that our decis-
ions have said a grant is good without an entry. Per-
haps it would be more correct to say a grant is good
without showing the copy of an entry, in the cases
where the law requires one which in the general would
be unnecessary, superfluous, and even improper. The
existence of an entry by copy would be attested by the

officer; he having the legal custody of it.    A grant attests the same existence by evidence of a greater dignity, by the great seal of the State, and supersedes all inferior modes of showing the same thing it shows.   A grant, being a public record, comprehends within itself every requisite for its existence, and, emanating under the sanction of the great seal, possesses the highest evidence of them when it is itself used as evidence."

In the opinion in that case delivered by Haywood, J., after stating certain causes for which a grant may be deemed void, it is added:    "But the grant is not void for any mistake or miscalculation, or wrong step taken by the officers of the government in stages precedent to the emanation of the grant, which is not induced by the fraud or misconduct of the grantee.   The public employs them, and is responsible for their acts, and must look for retribution in such cases to them, and not to the innocent grantee.   .   .   .   Imperfect and informal entries, wrong surveys without demarkation or chain carriers, surveys not made to the cardinal points, but in forms different from those prescribed by law, plats and certificates not made out and certified exactly as the law directs—these, if prejudicial to the government, are not causes for rescinding the grant.    The government ought to suffer for the acts of its officers, whom it appoints and trusts."

If it be true that the issuance of the grant on the claim of defendant for land in John Armstrong's ground without legislative direction, in the case in 5 Hayw.,

165, 9 Am. Dec., 780, was a mere irregularity, which in no wise would affect the grant itself, then certainly in the present case the fact of the making of complainant's entry in the office of the wrong entry taker was of no higher grade than a mere irregularity, and as such imported no vice into the grant issued thereon.    And, if in that case the court would conclusively presume that an entry had been made, notwithstanding the omission of mention thereof in the agreed statement of facts, or, as put by Justice Whyte in his opinion, if this statement had conceded that no entry had been made, yet the grant would not be affected, then it follows that the grant of complainant stands unimpeachable by reason of the fact upon which the defendant now seeks its avoidance.

In *Smith's Lessee* v. *Winton,* 1 *Overt.,* 230, 3 Am. Dec., 755, it was held that, "in ejectment between adverse claimants of land, evidence is not admissible to show that the grant upon which the interest of one of the parties depends was obtained by fraud."

In *Curle* v. *Barrel,* 2 Sneed, 63, it was said: "A person claiming title in virtue of a subsequent entry and grant, with notice of the prior grant which remains in force, has no such interest as will entitle him to litigate the right of the former grantee."    In this latter case the difference between a void grant and one merely voidable, in so far as it affects the defensive rights of a younger grantee, is pointed out.    It is there said that a void grant vests no title in the grantee, and,

notwithstanding its issuance, leaves the land covered by it unappropriated and subject to disposition upon the part of the State, and, this being so, that in an ejectment either party may obviate its force by showing that for any cause it is void. The court added: "It seems that in a collateral proceeding, not between parties to the grant, the grant, being matter of record, cannot in general be impeached and declared void, except by some matter of record—by some evidence of the same grade as the grant itself, or by facts apparent on the face of the grant."

In *Berry* v. *Wagner,* 13 Lea, 591, the general rule announced in the *Smith Case* and the *Curle Case* is again repeated, and is there distinctly recognized. That this rule is a wise one, in view of the authority and force which is attached to a grant from the State, we think is beyond question. If the State sees proper to condone a fraud perpetrated upon it by a party who secures a grant of its unappropriated lands, why should a younger grantee be permitted to make the question, especially if this younger grantee, as in the present case, had full notice, not only of the prior grant, but of all the circumstances under which it was issued? If the younger grantee will not be permitted to impeach the prior grant because of fraud in obtaining it, upon what sound ground can it be maintained that he can challenge it because of irregularity in the initial step taken in securing that grant? We are

satisfied that this cannot be done, and that it would be a violation of sound principle to permit it to be done.

While there has been fluctuation in the decisions in this State as to the necessity of an entry in order to the obtaining of a grant, and cases are produced holding to such necessity (*Crutchfield* v. *Hammock*, 4 Humph., 203; *Woodfolk's Lessee* v. *Nall*, 2 Sneed, 674), yet, as early as the case of *Craig's Lessee* v. *Vance*, 1 Overt., 182, Judge Overton, equaled only, possibly, by Judge Haywood in a knowledge of the land laws of this State, and who had as much to do in giving form to our technical land law system as any one, either on or off the bench, said: "An entry is not indispensably necessary to the validity of a grant." In later cases it has been held that neither entry nor survey is necessary to the validity of a grant. *Smith* v. *Buchannon's Lessee*, 2 Overt., 305; *Disney* v. *Coal Creek M. & M. Co.*, 11 Lea, 613; *Sampson's Heirs* v. *Chester's Heirs* (Tenn. Sup.), 91 S. W., 43.

Independent, however, of these authorities, we are entirely satisfied that, in the face of all the presumptions that attached to complainant's grant, the defendant will not be permitted in this action to inquire whether it was or not founded upon an entry made in the proper office. It seems to us irreconcilable with sound reason that a grant, issued by the highest officers of the State and authenticated by its great seal, should be made to depend for its validity upon the action of a subordinate, such as (possibly) an inefficient entry taker. In the

absence of a statute declaring in express terms a grant
void by reason of such an irregularity, as is attempted
to be shown in this case, we do not feel authorized to
yield to the insistence of the defendant in this cause.
The present record illustrates the unwisdom of resort-
ing to uncertain extrinsic proof to avoid a grant.    As
has already been stated, great differences existed as to
whether this land was on one side or the other of the
dividing line between Lewis and Wayne counties.   The
surveyor and entry taker of Lewis county, who recorded
the entry and made the survey for complainant, be-
lieved it to lay across this line.    Many citizens living
in the immediate neighborhood (if the contention of
defendant is right and his location of this dividing line
is to be relied upon)    believed themselves for many
years to be residents of Lewis county, when in fact they
were citizens of Wayne county.    Their children were
sent to the public schools of Lewis county, their prop-
erty, some of it adjoining the land in question, was
assessed by the officers of that county, and taxes upon
it were paid by them to its revenue collectors.    But
while this is so, as already stated, we think the weight
of the proof is with the contention of the defendant
on this point, yet the character of this evidence illus-
trates the wisdom of the rule that with the issuance
of the grant the entry, like the survey, has served its
purpose, and in a controversy between the first grantee
and the second, a sound public policy will not permit it
to be inquired into, save in exceptional cases.    In the

Stockard v. McGary.

words of Whyte, J., in *Overton's Lessee* v. *Campbell et al.,* supra, there are cases "in which the copy of an entry is necessary to be produced, not for the purpose of barely showing its existence, but to show the modifications under which it does exist, as where in the development of a title it is wished to give a grant beyond the date of it. The copy of an entry is a requisite for the exposure of particulars not appearing by the grant, not to show that the entry exists for the grant does that, but to show how it does exist as to time or date, location," etc. In other words, among other cases the entry may be resorted to in a controversy between an old grant and a later entry, and a younger grant and an old entry special in its nature, in order to give the younger grantee, under the rule of relation, priority by virtue of that entry.

The grant in this case thoroughly identifies the land in controversy, but recites that it is situated in Lewis county. If it be true, as we have conceded it is, that this land is situated in Wayne county, then the grant falls directly within the saving terms of section 3, c. 91, p. 89, of the Acts of 1859-60, this section being embraced in section 3766 of Shannon's Code.

Upon the whole case, we think there is no error in the decree of the chancellor; and it is affirmed.